## J. E. KETNER v. CHARLES ROGAN, COMMISSIONER, AND C. C. SLAUGHTER.

### No. 1106. Decided June 9, 1902.

**1.—School Land—Sale—Lease.**

Article 7, section 4, of the Constitution has been treated by the courts and the Legislature as a mandate requiring the sale of school lands; the controlling purpose to promote sales as fast as practicable is one of the most obvious and prominent features of the various statutes for the sale and lease of such lands. (P. 561.)

**2.—Same—Cancellation—Renewing Lease During Term.**

The lease law of 1895 (Acts Twenty-fourth Legislature, pages 63-67) did not empower the Commissioner to cancel an existing lease save for nonpayment of rent, nor to execute a new lease for lands already under lease; nor can such power be implied from that expressly given, it being inconsistent with the purpose of the law and with its express provisions, by which leased lands were to be periodically freed from that impediment to their sale and brought within the reach of settlers desiring to purchase. (Pp. 561-563.)

**3.—Same—Authority of Commissioner.**

The authority given the Commissioner by section 2 of the Act of 1895 (Laws Twenty-fourth Legislature, pages 63-67, Revised Statutes, article 4218c) to carry into effect the provisions of the act, with full charge and discretion of all matters pertaining to the sale and lease of said lands, is subject to the restrictions imposed by the provisions of that act, which impliedly forbid his renewing a lease before the expiration of its term (P. 563.)

**4.—Renewal of Lease Before Expiration.**

The action of the Commissioner in canceling, during its term, a lease of school lands and issuing to the lessee a new lease for that and other lands, for the term of ten years from such reletting, was unauthorized; and the existence of such lease did not justify the Commissioner, after the term of the first lease had expired, in refusing the application, of one complying with the law, to purchase a part of the leased land as an actual settler. (Pp. 560-565.)

**5.—Lease—Ratification.**

The State is no more bound by the acts of its officers in recognizing an unauthorized contract than in making it; so a renewal of a lease of school land during the term of the first lease did not become valid by the acts of the Commissioner in recognizing or the Treasurer in accepting rent under it after the first term had expired. (P. 564.)

**6.—Same—New Lease.**

The recognition of a lease of school land, invalid because made during the term of a previous lease, by the Commissioner and the lessee after the expiration of the first term, did not have the effect of making a new lease from the time it could have been lawfully made, for the land could not thus have been placed on sale at the expiration of the lease as the law required. (P. 564.)

**7.—Lease—Validation.**

The provisions of the Act of 1901 in regard to school land theretofore leased (Acts, 1901, page 295, section 4) were to make clear what leased land should and what should not be subject to sale; they refer to valid leases only, and were not intended to validate unauthorized leases. (Pp. 564, 565.)

Original application by Ketner for writ of mandamus to Rogan, as, Commissioner of the General Land Office, Slaughter being joined as respondent.

*Ashby S. James, E. H. Yeiser,* and *C. R. Kinchen,* for relator.— *Beall & Beall* and *W. M. Walton,* on behalf of parties similarly interested, also filed briefs and arguments for relator, by permission.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant, for respondent Rogan. *G. G. Wright,* for respondent Slaughter. *Matlock, Miller & Dycus* also filed briefs and arguments for respondents, by permission, on behalf of clients similarly interested.

WILLIAMS, Associate Justice.—The relator instituted this proceeding in this court to compel respondent, by mandamus, to accept his application for the purchase of two sections of school land in Lynn County, and to do the other ministerial acts provided by law essential to the completion of his contract with the State. Slaughter is joined as the holder of a lease of the land from the State, the existence of which constitutes the reason for respondent's refusal to recognize relator's application. The question is as to the validity of this lease, since, if it is operative, it is a bar to relator's application. The facts out of which the question arises are these: The land in question, along with other sections, was regularly leased to one Stith for the term of five years from September 4, 1895. Through assignments, Slaughter, in 1897, became the owner of this lease and continued such until April, 1900. Besides this lease, he was the owner of many others for different periods, to expire at different times, for various quantities of land, aggregating several hundred thousand acres. In his inclosures school lands not covered by his leases were included, and a claim for rent thereof was made by the officers of the State and paid by him; and an agreement was then made between him and the Commissioner that he would lease all of the land inclosed; that his existing leases would be canceled, and a new lease of all of such lands, those before leased as well as those inclosed but not leased, for ten years from that date should be executed. This was done and Slaughter has since held the lands under this consolidated lease, paying the rent and otherwise complying with its terms. Relator,

claiming that the cancellation of the Stith lease before its expiration and the reletting were unauthorized, and that, after the date fixed for the termination of the first lease, the land became subject to sale notwithstanding the lease to Slaughter, settled upon and made application to purchase the sections in question, in March, 1902, and took all steps required by law to perfect his right, but his application was rejected by respondent for the reason stated.

The statutes regulating sales and leases of school lands, beginning in 1887 and including those of 1895 and 1897,—the last two of which control this case, were passed in obedience to the command of the Constitution that such lands "shall be sold under such regulations, at such times, and on such terms as may be prescribed by law." Art. 7, sec., 4. This provision has been treated by the decisions of this court, and by the Legislature, as a mandate requiring the sale, under provision to be made. by law, of lands belonging to the school fund; and legislation has been shaped with it in view, for the purpose of carrying it out. Reed v. Rogan, 94 Texas, 182; Smisson v. State, 71 Texas, 232.

The controlling purpose to promote sales as fast as it is, or may become, practicable to make them is therefore one of the most obvious and prominent features of the statutes.

Provisions have been introduced for temporary leasing in order to derive revenue from the lands while conditions favorable for selling were ripening, but not for the purpose of unreasonably interfering with the execution of the command of the Constitution that the lands be sold.

In the law of 1895, as in all others, the Commissioner was authorized to lease, "if satisfied that the lands applied for are not in immediate demand for the purpose of actual settlement." This provision marks the uniform policy of which we have just spoken. It submits to the Commissioner the determination of the question stated, when application to lease is made, and if the conditions exist under which he is empowered to act; that is, if the land applied for is then subject to either sale or lease, as he may determine, his decision would doubtless be conclusive and beyond review in the courts. But the Legislature did not leave his power to lease unrestricted. It required that leases should be for periods of time to be stated in the contract, not to exceed in duration times fixed in the statute,—five years under some conditions and ten years under others; the shorter period being evidently applied to those lands which would, as the Legislature supposed, soonest come into demand for purchase. It also provided "if at the termination of any lease the lands covered thereby are still for lease, the lessee thereof shall have the preference right to again lease * * * upon the terms and at the price then fixed by law." In order that the terms of leases and the lands covered by them might be known, they are required to be registered in the proper counties. Express authority was given to the Commissioner to cancel leases for nonpayment of rent, in which event it was declared that the lands should "become subject to purchase or lease"

under the other provisions. Provision was made for the termination of some leases as to all or part of the lands embraced in them, by published notice from the lessee that he would not continue his lease beyond the year for which rent had been paid; and by lease or purchase by others of parts of such lands.

These provisions sufficiently show the legislative policy, the scope of the powers given to the Commissioner in leasing, and the restrictions on those powers.

Among the powers expressed there is none to cancel an existing lease, except for the nonpayment of rent; and none to execute a new lease of lands already let; and the only claim is that such authority is included in, or arises by implication from that expressly given.

The outline which we have given makes it apparent, we think, that such power can not be implied for the reason that its existence is inconsistent with the purpose of the law and its express provisions.

The Legislature has so shaped the law that all of these lands, after they have been classified and appraised, save such as have been leased, shall be at all times open to purchase by actual settlers; and that those that have been leased shall be periodically freed from that impediment and brought within the reach of settlers desiring to purchase. This the Legislature sought to accomplish by requiring that letting should be for fixed periods of time, not to exceed the maximum terms prescribed by the statute, and that these periods should be evidenced by recorded leases. The Commissioner was thus empowered to fix the times for which leases might last, but forbidden to extend the limits fixed by the statute. It is evident that power to cancel a lease just before its expiration and to immediately execute another could be made the equivalent of the power withheld. In this way a ten-year lease could be practically made one for twenty years, and thus might be indefinitely extended, so long as the law should remain unchanged. In this way all opportunity to purchase at the expiration of a lease would be completely shut out. While the Commissioner is allowed to determine whether land shall be leased or sold, the plain intendment is that he is to determine this before ever leasing at all, and again at the termination of any lease, either by expiration of the term or for the cause allowed by the statute; and that he is to determine at the time thus fixed by law, according to conditions then existing, whether or not the land is in demand for settlement. While, from the necessity of the case, he is authorized to cancel for nonpayment of rent, this can not be allowed to include the power to cancel by agreement, merely for the purpose of immediately granting a new lease for a new term. This special power is given for a limited purpose, while such a general power would be wholly inconsistent with the cherished objects of the law. The grant of the special power not only does not include the more general one, but in itself rather tends to negative its existence.

This view of the law is emphasized by other provisions above noted. Preference is given to a lessee at the expiration of his lease, over others

seeking to lease, but not over purchasers; for the preference is carefully limited to those cases where the land is "still for lease," plainly applying only where the Commissioner at that time finds that the lands are not in demand for settlement. The power contended for would enable the Commissioner to give the lessee, before the expiration of the lease, a preference over every other person, when the law gives it only when the lease has expired, and not then if the land is in demand for settlement. The Commisioner is not empowered to determine in advance that there will be no demand for the purchase of the land when the lease shall expire, but only to determine that question at the expiration of the lease, when there is an opportunity open to intending purchasers to make known their purposes. Again, the preference given to the lessee is to lease "upon the terms and at the prices then (at the expiration of the lease) fixed by law." Power to cancel a lease before its expiration and at once relet the land for five or ten years longer would prevent the operation of any change in the law as to prices and terms which might be made before the time fixed in the lease for its termination arrived.

Another provision strongly suggesting the same thought is that which declares that upon cancellation for failure to pay rent, the land "shall become subject to purchase or lease under the provisions of this act;" that is, subject to purchase if in demand for settlement, and to lease if not so in demand. Whether or not such demand exists the Commissioner, under the other provisions, is to determine when the necessity arises from the cancellation expressly authorized by the law. The power here asserted is to cancel for a reason not authorized by the statute, and to relet under an agreement which precludes any such inquiry as that which the law requires in the contingencies for which it provides.

It is true that by the second section of the Act of 1895 the Commissioner was "vested with all power and authority necessary to carry into effect the provisions" of the act; and was given "full charge and discretion of all matters pertaining to the sale and lease of said lands, * * * with such exceptions and under such restrictions as may be imposed by the provisions of this act, or by the Constitution of the State."

But what we have said sufficiently shows that, in our opinion, such power as that exercised is not necessary to carry into effect the provisions of the statute, but is inconsistent with and calculated to defeat them; and that it is within the "exceptions" and "restrictions" imposed upon the action of the Commissioner. We base our discussion upon the Act of 1895 for the reason that, so far as it was amended in 1897, the provisions referred to were retained, and more particular reference to the amendatory act is unnecessary. Our conclusion is that the Commissioner had no power to lease to Slaughter the land in question, at the time and under the circumstances shown. Nor is the previous action of his predecessors, of the same character, enough to alter what seems to us to be the clear meaning of the statute. The State may have realized pecuniary benefit from the course taken, but that can not affect the question before us.

The lease to Slaughter, being unauthorized when made, if it afterwards acquired validity, it would be because it had been ratified, or because the Commissioner, having power to act after the expiration of the Stith lease, recognized and acted upon the substituted lease, with the consent of Slaughter, and thus gave it the force of a new contract, taking effect from that time. Nothing has been done by the State to ratify the transaction. All that has been done under the lease has been done by the parties to it, and the Treasurer in receiving the rent. The State is no more bound by these unauthorized acts of its officers than by the unauthorized contract. Day Land and Cattle Co. v. State, 68 Texas, 553; Walker v. Rogan, 93 Texas, 255.

The other proposition involved in the contention, that the lease became valid as a new contract when the Commissioner and Slaughter both recognized and acted upon it after the latter had power to lease, sounds more plausible; but the answer to it is as inconsistent with the provisions of the law which we have noticed as would be the power in the Commissioner to make the lease originally.

The practical effect of the contention, if sustained, would be that the land never in fact came into the market for sale as the law required. No opportunity to purchase was ever afforded, no opportunity to lease, no determination that the land was not in demand for settlement, and no lease was ever made at a time when there was power to act. The Commissioner and Slaughter, when the Stith lease expired could have made a valid lease by then complying with the law, but they did not do so, and the case still rests upon the unauthorized lease,—nothing having been done in the exercise of the power which the Commissioner had.

It is equally clear that there was no validation of such leases by the Act of 1901. The provision relied on is as follows:

"All lands which may be leased shall be subject to sale at any time, except where otherwise provided herein. This provision in regard to the sale of leased lands shall apply to leases heretofore made, as well as to those hereafter to be made. Any section, or part of a section, which may be leased shall not be sold, except to the lessee, nor shall the lessee be disturbed in his possession thereof during the term of his lease, when he has placed on such section, or part of a section, improvements to the value of two hundred dollars. In the following named counties lands heretofore leased shall not be subject to sale until such leases expire, except as herein provided, to wit: * * * Lynn, * * * provided, that after the expiration of five years from the date this act takes effect all lands now under lease in any of the counties above named shall be subject to sale, regardless of the fact as to whether or not the lease on the land has expired."

The provisions concerning leases theretofore made refer to valid leases, and the purpose is to make clear what leased lands shall be subject, and what ones not subject, to sale. There is nothing whatever to indicate a purpose to validate unauthorized leases. Further on in the statute there is an express prohibition of such action as is here in question, and

this would have been the appropriate place, had the Legislature so intended, to have introduced a clause validating prior acts of that character.

It was shown that Slaughter has made improvements of the value of several thousand dollars on one of the sections in question; but the fact, as it here exists, does not create any impediment to the purchase by relator, as it does not bring the case within any of the provisions of the statute concerning improvements by lessees. The question as to the title to these improvements can not be decided in this proceeding, in which the only question is whether or not the right asserted by Slaughter is such as to preclude relator from buying the land. Since we have concluded that the lease to Slaughter could not prevent the land from becoming subject to sale upon the expiration of the Stith lease, and as nothing has since occurred to change its status, we are of the opinion that the mandamus should issue.

*Writ awarded.*