## S. C. Martin v. J. J. Terrell, Commissioner.

### No. 1240. Decided November 12, 1903.

**1.—School Land—Lease—Purchase by Lessee—Act of 1901.**

School lands in Schleicher County, held under a valid subsisting lease from the State, were not subject to sale, in May, 1903, by the Land Commissioner, to one holding by assignment the rights of the lessee, under the Act of April 19, 1901, Gen. Laws, 27th Leg., chap. 125, p. 292.  (Pp. 120-124.)

**2.—Same—Case Distinguished.**

The decision in Tolleson v. Rogan, 96 Texas, 424, was made under the law of 1897, and was based upon the construction of that and previous laws acted upon by the Commissioners of the General Land Office; it is not controlling as to the right of a lessee to purchase under the Act of 1901.  (P. 123.)

**3.—Same—Statute Construed.**

Under the Act of April 19, 1901 (Gen. Laws, 27th Leg., chap. 125, sec. 5, p. 296), the Land Commissioner could only cancel a lease, except on failure to pay the rent, "where the land has been or may be sold as provided by law;" and this refers to sales of land outside the absolute lease district, which is subject to sale at any time.  (P. 122.)

Original application to the Supreme Court for writ of mandamus against the Commissioner of the General Land Office.

*N. A. Rector* and *Brown & Silliman,* for relator.—Did the Legislature that passed the Act of April 19, 1901, depart from the recognized policy of all former Legislatures, since 1883, to sell the public free school lands to actual settlers, whether the same were or were not under lease, provided in the latter case the holder of the lease consented to the sale?

Said act was not in itself a general system providing for the sale of school lands. Its distinctive features are, (1) to change the place of filing applications to purchase from the Land Office to the office of the county clerk, which officer was to keep a proper record showing priority of purchasers; (2) to provide that no application should contain more than one section, and that no more than four sections could ever be sold to any one purchaser under said act, and, to effect this, that the application should show on its face what sections (if any) the applicant had already puruchased under that act; (3) actual settlement was required by purchasers of detached lands; (4) leases were not to be made for a longer period than five years, and the Commissioner was prohibited from renewing any lease before its termination as shown by the original lease contract; and (5) the absolute lease district was moved further west, and twenty-one counties formerly embraced in it were taken out, and such leases in said twenty-one counties as ran for a longer period than five years from the date of the passage of said act were cut down to a period of five years. There were other minor changes as to procedure, but the above are believed to be the distinctive changes made in former laws, which changes, however, were made without special reference to any existing law.

We have carefully examined every provision of said act, and have nowhere discovered any suggestion that there was any purpose on the part of the Legislature to withdraw any of the school lands from sale,

or that the holder of a lease might not waive it in his own behalf or in behalf of any other person so that a sale might be effected. The protection given in section 4 to the owners of leases on land on the outside of the absolute district, is safeguarded in almost the identical language used in the Act of 1897; and the same may be said as to leaseholds in the absolute lease district, as defined in section 5. Lands not in the absolute lease district, though under lease, were subject to sale by virtue of the provision (identically the same in both acts). "All lands which may be leased shall be subject to sale at any time, except where otherwise provided herein." There was in the Act of 1901 only one general exception in favor of the lessee, viz., where he had placed $200 worth of improvements on a section, whereas in the former act there were three exceptions. There was, however, as to leases in Schleicher and other counties formerly in the absolute district, the further exception that, under certain conditions, their lease might remain absolute for a period of five years. Acts of 1901, p. 292, et seq.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant Attorney-General, for respondent.—Section 4 of the Act of 1901 provides as follows: "Any section or part of a section which may be leased shall not be sold except to the lessee, nor shall the lessee be disturbed in the possession thereof during the term of his lease, when he has placed on such section or part of a section improvements of the value of two hundred dollars. In the following named counties lands heretofore leased shall not be subject to sale until said leases expire, except as herein provided, to wit:" following with a list of counties, and the following: "Provided that after the expiration of five years from the date this act takes effect all lands now under lease in any of the counties above named shall be subject to sale regardless of the fact as to whether or not the lease on the land has expired."

We submit that it is significant that the provision in this section exempting improved sections from sale during the term of the lease has an express exception authorizing sales to the lessee, while the provision immediately following exempting lands leased in Schleicher and the other named counties from sale during the term of the lease does not contain this exception, but does contain the exception, "except as provided herein," referring to the proviso that such lands may be sold after five years, whether the lease has expired or not.

In the Act of 1901 there is a clear departure by the Legislature from the language used in previous acts, which can only be accounted for upon the hypothesis that a different result was intended to be accomplished.

The intention contended for by respondent could not have been more clearly expressed unless the Legislature had used, in section 4, the language, "In the following named counties lands heretofore leased shall not be subject to sale until the leases expire, to the lessee or any other persons," etc.

It is to be noted that in section 5 of the Act of 1901, referring to

lands which are left in the absolute lease district, it is provided as follows, "and lands situated in the absolute lease district which may be leased shall not be sold during the term of the lease except as provided herein," meaning, except as provided in that act, and as no provision is made, in that act, for such sales, this provision is likewise construed by the Land Commissioner as prohibiting sale to the lessee during the term of the lease.

BROWN, ASSOCIATE JUSTICE.—This is an original action in this court by the relator against respondent in which a mandamus is sought against the Commissioner of the General Land Office of Texas upon the following allegations:

S. C. Martin alleges that he is over 21 years of age and resides in Schleicher County, Texas. John J. Terrell resides in the city of Austin, and is the duly elected and qualified Commissioner of the General Land Office of the State. For cause of action the relator alleges, that on and before the 30th day of May, 1903, and continuously from said date to the present time, he was the owner of section No. 45, block 8, located by virtue of certificate 0-321, issued to the Texas Western Narrow Gauge Railway Company, which land is situated in Schleicher County, Texas, and that the relator was, at the date aforesaid and since that date to the present time, a bona fide settler upon the said section 45, block 8. He alleges that sections Nos. 38 in block 8, certificate 0-312; 40, block 8, certificate 0-318; 44, block 8, certificate 0-320, and section 46, block 8, certificate 0-321, all of said certificates granted to the said railway company, and said lands situated in Schleicher County, within a radius of five miles of petitioner's home section 45, block 8, are public free school lands, which were on and prior to May 30, 1903, by the Commissioner of the General Land Office duly classified as dry grazing land, appraised at $2 per acre, and placed upon the market for sale.

Relator alleges that on the 8th day of October, 1896, the four sections above described, being free school lands, were by the Commissioner of the General Land Office duly leased to one John Berry for a period of ten years from September 11, 1896, which lease was recorded in Schleicher County; that the annual rentals upon the said lease have been paid regularly in advance as required by law, and that said lease account is in good standing, both in the Treasurer's office and in the General Land Office of Texas. It is alleged, that, by regular chain of transfers from John Berry, relator was owner of the lease of the said four sections on May 30, 1903; on said date petitioner made separate applications to the Commissioner of the General Land Office to purchase the four sections of land described in his petition as additional lands to his home section No. 45, which applications were in due form and in every respect according to law, were filed in the county clerk's office of Schleicher County as required by law, and the one-fortieth part of the purchase money of each section was deposited with the said county

clerk of Schleicher County with a separate contract to pay the balance on each section, who forwarded the said money to the Treasurer of the State of Texas and the said applications and contracts to the Commissioner of the General Land Office; that each application was supported by his affidavit in strict compliance with the statute, and all of the applications, contracts and affidavits were received in the office of the Commissioner of the General Land Office on the 8th day of June, 1903. That on the 9th day of June, 1903, the respondent, John J. Terrell, Commissioner of the General Land Office, rejected each of said applications, assigning as his reason therefor, that the said lands were under a lease to John Berry, which lease was then held by applicant, and that the sections were not subject to sale for that reason. The petitioner alleges that he is the owner of the said lease upon the said four sections of land, and as such lessee he is entitled to purchase the same under the provision of the laws of this State. He alleges that he was not the owner of any free school or asylum lands in this State at the time of his application, and that since the 19th day of April, 1901, he has not purchased from the State of Texas any public free school or asylum lands. That relator is not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in the purchase thereof. He claims that he had a right to purchase the said lands, and prays the court for writ of mandamus to compel John J. Terrell, Commissioner, to accept and approve his said applications that he may become a purchaser of the said lands under the laws of the State. That the said Terrell was, by the laws of the State, required, under the facts and circumstances alleged by the petitioner, to accept and approve the said applications, and that his refusal so to do is a violation of a positive duty enjoined upon him by the statute.

To this petition, John J. Terrell, Land Commissioner, by the Attorney-General, filed an answer consisting of a general demurrer and the following special plea:

"And further answering, respondent says, that, since the passage of the act of April 19, 1901, the provisions of section 4 thereof have been construed to prohibit sales to a lessee or the assignee of the lease, during the existence of the lease, of lands leased in the counties named therein, and the same construction has been given to the provisions of section 5 with reference to lands under lease in the counties named in said section."

The fourth section of the act of the Twenty-seventh Legislature entitled "An act relating to the sale and lease of public free school and asylum lands, and to repeal all laws and parts of laws in conflict herewith," contains the following provisions regulating the sale of lands which had been previously leased by the State in Schleicher and other counties: "In the following named counties, lands heretofore leased shall not be subject to sale until said leases expire, except as herein provided, to wit: Kent, Garza, Lynn, Scurry, Borden, Dawson, Mitchell,

Martin, Howard, Coke, Sterling, Glasscock, Tom Green, Irion, Menard, Schleicher, Mason, Uvalde, Frio, Kerr and Bandera; provided, that after the expiration of five years from the date this act takes effect all lands now under lease in any of the counties above named shall be subject to sale regardless of the fact as to whether or not the lease on the lands has expired." The fifth section of the said act contains this language: "The following counties shall constitute the absolute lease district, to wit: * * * and lands situated in the absolute lease district which may be leased shall not be sold during the term of the lease, except as provided herein."

All of the counties named in both of these provisions were embraced in the absolute lease district created by the Act of 1897, and it was the purpose of the Legislature by this enactment to separate them, making all lands not·previously leased, lying in the counties named in the first clause quoted, subject to sale, and after five years lands already leased to be subject to sale, but during the period of five years from the passage of the act such land could be sold only under the provisions of that act. The sale of the lands during the term of the lease is thus provided for by the fifth section of the said act: "And when the lessee shall fail to pay his annual rental within sixty days after it becomes due the Commissioner of the General Land Office shall cancel said lease and immediately notify the county clerk of the county in which the land or a part thereof is situated of the cancellation and the date when canceled, and the clerk shall note the date of the cancellation on his lease records, and the land shall be on the market for sale for sixty days after the said cancellation."

The lands which are in controversy in this action were leased to Berry on the 8th day of October, 1896, for ten years, hence the lease had not expired on the 30th day of May, 1903, when the applications to purchase were made by the relator. The relator is not entitled to purchase under the said fifth section, because the lessee had not failed to pay the annual rental at any time, and the Commissioner of the General Land Office had no authority to cancel the lease unless such failure had occurred and continued for sixty days. The authority of the Commissioner to cancel leases is defined in the following terms: "The Commissioner of the General Land Office is hereby prohibited from renewing any lease before its expiration as shown on the face of the original lease contract, and no lease contract shall be canceled except in cases where the land has been or may be sold as provided by law, or where the lessee fails to pay the annual rental due the State within sixty days from the date it became due." The clause, "where the land has been or may be sold" refers to sales of land outside the absolute lease district, which is subject to sale at any time. By those provisions the State expressed its determination to continue leases in force for the whole term, and the only way that the lessee can terminate the lease is by failure to pay the rental and cancellation by the Commissioner, in

which case the land becomes subject to sale for sixty days as other lands to any purchaser who may apply.

It is not necessary for us to determine whether the law of 1901 repealed the twenty-third section of the Act of 1895 (Gen. Laws 24th Leg., p. 63), nor do we decide whether that section if in force applies to the lands in the absolute lease district, except that it confers no right upon an assignee of a lease to purchase land in said district during the continuance of the lease.

It is claimed that this case comes within the rule announced in Tolleson v. Rogan, 96 Texas, 424. The difference between the two cases is this: The lease of the land involved in that case was made under the law of 1897 and the prior laws then in force, while the land the subject of this suit was purchased under the law of 1901. Under the law of 1897, and previous laws, the Commissioners of the General Land Office had ruled that lessees and their assignees might buy land embraced in a lease during the term for which it was leased, and this ruling had been continued so long and the sales under it were so numerous that this court concluded that it was its duty to follow the rule of construction which requires that under such circumstances, if the meaning of the law be doubtful, the court should sustain the concurrent construction placed upon it by the officers charged with its execution. In delivering the opinion of the court, Justice Williams said:

"We have endeavored merely to point out some of the reasons which may be urged in support of the long continued construction of these laws made by those whose duty it was, in the first instance, to construe and execute them, in order to show that such action was not so clearly wrong as to justify the courts in disregarding it. The great weight which, from necessity, courts must often give to the contemporaneous construction put upon laws by other departments and officers to whom is committed their practical administration, is so well understood that it need not be dwelt upon. Sound public policy requires the solving of all mere doubts in favor of constructions so made and uniformly acted upon. Fitter occasion for the recognition of this could not well be imagined than controversies arising upon the construction of these land laws, extensive in their provisions and in the subjects upon which they operate, bristling with questions, and requiring at every step decisions which the Commissioner must make at the peril of purchasers and others dealing with him. Upon many of his rulings are based thousands of sales on which rest the titles of purchasers which may be destroyed by decisions in the courts reversing such rulings." The opinion in that case rests upon the concurrent construction of the Commissioner of the General Land Office and not upon the court's interpretation of the statute. In the present case there is no such construction. The Commissioner has held that under the Act of 1901 lessees and their assignees have not the right to purchase during the continuance of the lease, and no rights have been acquired to be impaired by the decision of this case. If there had been no change in the language of the former

laws we would feel ourselves bound to give the same construction to the law of 1901 as was given in Tolleson v. Rogan, but the language is different and new provisions added which indicate an intention to change the policy established by the commissioners' former rulings, and to restrict the power of commissioners over leases for the future. It was not held in Tolleson v. Rogan that the assignment of the lease gave the assignee a right to purchase, but it was by virtue of the consent of the original lessee that the sale could be made by the Commissioner.

We conclude that at the time the relator applied to purchase the sections of land described in his petition they were not upon the market for sale under the provisions of the Act of 1901, herein quoted, therefore the application for writ of mandamus is refused.

*Mandamus refused.*