### M. E. TREVY v. W. R. LOWRIE.

Decided October 18, 1905.

**1.—School Lands—Sale Pending Lease.**

The Commissioner of the General Land Office had no authority, under the law of 1897, to sell school lands situated in the absolute lease district, which were under lease at the time the application to purchase was made. Gen. Laws 1897, p. 184.

**2.—Same—Transfer of Lease—Effect.**

Where a lessee of school land in the absolute lease district transferred, under the law of 1897, all his rights under the lease to one who was ineligible to purchase the land, this did not authorize a sale of the land to another during the existence of the lease.

**3.—Same—Trespass to Try Title.**

Since the plaintiff in trespass to try title has the burden on him and must recover on the strength of his own title, a defect in the title of the defendant can not aid him.

Appeal from the District Court of Scurry. Tried below before Hon. H. R. Jones.

*Ed. J. Hamner,* for appellant.

*Beall & Beall,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is an action of trespass to try title to the southwest quarter of section 143, in block 97, State school land, in Scurry County, as surveyed by the Houston & Texas Central Railway Company, by virtue of certificate number .43-5574, instituted by appellee against appellant and Andy Trevy. The latter entered a disclaimer, and was dismissed from the suit. ⋅ Appellant filed a general and special demurrer, and pleaded not guilty. A trial by the court resulted in a judgment in favor of the appellee. The record contains a statement of facts, as well as the court's findings of fact and law. This is a second appeal. (33 Texas Civ. App., 606, 78 S. W. Rep., 18.)

Section number 128 was classified as watered grazing land under the law of 1897, and was appraised at one dollar an acre, and on January 16, 1899, appellant filed an application, properly prepared, in the General Land Office, and on March 20, 1899, the land was awarded to her. Appellant also showed that she had made due proof of occupancy of said section 128, her home section, by virtue of which she purchased the land in controversy, which proof of occupancy was filed in the General Land Office on January 23, 1902. Section 128 was patented to appellant on September 25, 1902. It was proved that appellant had resided continuously on her home section, number 128, since she filed on the same on December 26, 1898.

On August 26, 1899, appellant applied to the Commissioner of the General Land Office to purchase the land in controversy as additional land to section 128, which application was in due form of law, and was filed in the General Land Office on August 28, 1899, and the land was awarded to her on April 30, 1900. She has fully paid the principal and interest due by her on survey 143, of which the land in controversy is a part.

On October ——, 1897, the land in controversy was leased to A. P. Bush, Jr., for a term of five years. On November 30, 1898, he conveyed and released said section 143, "with all the right given by statute under which said lease was made, to Mrs. M. E. Trevy." In pursuance of that transfer the Commissioner of the General Land Office canceled the lease to A. P. Bush, Jr., so far as section 143 was concerned, on May 13, 1900.

On September 26, 1899, G. A. Autry, who claimed section 128, the home section of appellant, obtained a judgment against appellant and her codefendants for that section, and on March 26, 1901, the .Commissioner of the General Land Office endorsed on the applications to purchase sections 128 and 143: "Canceled by decree of court." On June 7, 1901, he wrote on the same applications: "Reinstated, 6-7-1901. Charles Rogan, Com'r."

On January 31, 1901, G. A. Autry transferred his judgment against appellant and others to H. P. Wellborn. In March, 1901, appellant instituted suit against Wellborn to recover section 128, and to set aside the judgment against appellant which had been transferred to him by ⋅ G. A. Autry, and on March 18, 1901, judgment was rendered setting aside the judgment and canceling the application of G. A. Autry to purchase the land, upon which he had obtained his judgment, on the ground that it was utterly null and void, and decreeing the title to the land to be in appellant. That judgment is a valid and subsisting one,

obtained in a court of competent jurisdiction. Prior to the time that the suit to annul the Autry judgment was filed Wellborn made a deed to section 128 and delivered it to A. P. Bush, although the name of the grantee was not inserted in the deed. The name of the grantee was omitted at the suggestion of Bush.

The lease of lands to A. P. Bush, Jr., hereinbefore referred to, was canceled on January 6, 1902, for failure to pay the fifth annual rental due on it, and on April 1, 1902, appellant again applied to purchase section 143 as additional land to section 128, which application was rejected on April 19, 1902. Mrs. Trevy was a widow, and she swore that she was not acting in collusion with others in buying the land, and that no other person or corporation was interested in the purchase of the land. She also stated that she borrowed the money from A. P. Bush, Jr., to get the patent to the land, and gave her note and a deed of trust on the land for it, and still owed interest on it. We conclude that she was an actual settler in good faith on her home section, and that there was no evidence of any collusion with anyone to purchase the home section or section 143, and that the land was properly awarded to her by the Land Commissioner.

Appellee proved that on August 26, 1899, the land in controversy was classified as dry agricultural land, and was appraised at $1.50 an acre, and that on August 14, 1900, he applied to purchase the land, in the manner prescribed by law, and that the application was rejected by the Commissioner of the General Land Office on September 27, 1901. He also proved that on May 16, 1901, he made another application to purchase the land, complying fully with all the legal requirements, and that this application was rejected by the Land Commissioner on June 12, 1901. He proved that he settled on the land on January 8, 1898, and made improvements thereon, and has continually resided thereon with his family since March 9, 1898. He put eighty acres of it in cultivation.

The burden rested upon appellee, who was the plaintiff in the lower court, to prove that the lease to Bush, as to the section involved in this suit, had been canceled, as provided by law, before he applied to purchase the land. (Trevy v. Lowrie, 33 Texas Civ. App., 606, 78 S. W. Rep., 18.) If that lease was not canceled at the time that appellee applied for purchase of the land, the applications were properly rejected, and the application can not be made the basis of a recovery of the land, even though the evidence clearly showed that appellant had no title to the land. Appellee must recover upon the strength of his own title, and not upon the weakness of that of his adversary. It is in order, therefore, to consider the question as to whether the lease of A. P. Bush, Jr., had been set aside so as to give the Land Commissioner the right to sell the land, for the land is situated in the absolute lease district, and the Land Commissioner could not, under the laws of 1897, sell the land if the lease on the land was in existence when appellee made his application. (Tolleson v. Rogan, 96 Texas, 424; Smith v. McLain, 96 Texas, 568.)

The cancellation as to the lease to all the land, for nonpayment of the rent, did not take place until January 6, 1902, and the last application to purchase the land was made by appellee on May 16, 1901, and

was rejected on June.12, 1901, and it follows that, unless the transfer of A. P. Bush, Jr., to appellant of his rights under the lease to section 143 had destroyed the lease as to that section, and had placed it in a position to be purchased by anyone, appellee obtained no right to the land by his applications to purchase in 1901. The transfer referred to is as follows:

"State of Texas,
"County of Mitchell.

"Know all men by these presents: That, for and in consideration of the sum of $25 to me in hand paid, the receipt of which is hereby acknowledged, that I, A. P. Bush, Jr., hereby convey and release, with all the rights appertaining thereto under lease number 20652, sections numbers 143 and 145 in block 97, H. & T. C. R. R. Co. surveys, in Scurry County, Texas, with all the rights given by statute under which said lease was made, to Mrs. M. E. Trevy." It was dated November 30, 1898. The Land Commissioner certified that section 143 was awarded to appellant on April 30, 1900, and that on May 3, 1900, it was canceled out of said lease by a notice given to the lessee and State Treasurer that the application of appellant to purchase had been accepted.

It has been held by the Supreme Court in Smith v. McLain, above cited, that the waiver of a lease, by a lessee from the State, in favor of an ineligible purchaser, does not authorize the sale of the land to any other person during the existence of the lease. In the Smith-McLain case the instrument by which the waiver of the lease was given in terms restricted the waiver to the party to whom it was given, and the court held that it did not remove the obstacle to a purchase by any other person than the one to whom it was given. In Tolleson v. Rogan, however, the transfer was similar to the one made by Bush to appellant, and it was therein held that the law of 1897 prohibited the sale of leased lands in the absolute lease district to anyone except the lessee or his assigns. That case is directly in point in this case, and its effect is to place section 143 in a position to be sold to appellant, and her alone, and if she was ineligible to buy it it remained leased land. The rights of the lessee were granted to appellant, and if it was of no effect because appellant could not purchase, it was still subject to the lease, and no action that might have been taken by the Commissioner of the General Land Office to cancel the lease as to section 143, by reason of the transfer to appellant, was of any force or effect. (Smith v. McLain, above cited; Ketner v. Rogan, 95 Texas, 559.)

The lessee from the State could not convey any rights to his transferee except to waive in her behalf the lease that he had so as to enable the Land Commissioner to sell the land to her, and a transfer of all rights the lessee had under his lease would convey the same rights that a waiver in terms would convey, and nothing more. In either case the instrument would enable the Land Commissioner to sell to the person to whom it was given, and no one else, and if such person was ineligible to purchase, the land would still be subject to the lease. It is said in Martin v. Terrell (97 Texas, 118): "It was not held in Tolleson v. Rogan that the assignment of the lease gave the assignee a right

to purchase, but it was by virtue of the consent of the original lessee that the sale could be made by the Commissioner." It follows that the Commissioner could only make the sale by virtue of the consent of the lessee, and, as that consent was given to a certain person, no authority to sell would arise by virtue of such consent except to the person to whom the consent was given. It was held in the case last cited that, under the laws of 1901, page 292, school lands in the absolute lease district could not be sold to an assignee of the lessee, but this case is governed by the law of 1897, and the cases of Smith v. McLain and Tolleson v. Rogan are applicable to it.

If, at the time the transfer was made by Bush to appellant, she could not purchase section 143, because she had no title to her home section, and her purchase was therefore invalid, the transfer had no effect whatever upon the lease, and it was not subject to sale when appellee applied to purchase it, and it would not matter upon what ground the Land Commissioner rejected his applications, they were properly rejected, and appellee has failed to make out his case. (Gracy v. Hendrix, 93 Texas, 26; Willoughby v. Townsend, 93 Texas, 80.) As said in the last case: "But, as defendant in error was plaintiff, it was necessary for him, in order to maintain his action, to show such compliance with the law as entitled him to an award of the land at the hands of the Commissioner; and the defect in the title of the plaintiff in error could not help him."

The judgment of the District Court is reversed, and judgment here rendered that appellee take nothing by his suit, and that appellant recover all costs in this behalf expended in this court and the lower court.

*Reversed and rendered.*

Writ of error refused.