W. S. BLEVINS V. J. J. TERRELL, COMMISSIONER, ET AL.

No. 1166. Decided April 16, 1903.

School Land—Void Lease—Cancellation—Reletting.

A lease of school land was illegally canceled, and a new lease, void because of such illegality made by the Land Commissioner. After the expiration of the term of the first lease. this second one was canceled and a third thereupon made to the same lessee  Held that the first lease having expired and the second being void the land was then open to sale or lease, and the third lease, being valid prevented the purchase of the land by a subsequent applicant therefor. (P. 414.)

Application by Blevins for writ of mandamus against the Commissioner of the General Land Office.

*Walter Gillis, for relator.*—It may be contended that notwithstanding the cancellation of the first lease—the one to Swan—before its expiration, that it continued in force for the full period of five years, expiring at the end of the term, to wit, on September 20, 1897; that the lease made to Gage on August 17, 1896, and before the expiration of the Swan lease, was void; and that therefore the last lease made to Gage on February 2, 1900, was a valid lease. If so it should be remembered that in each instance the cancellation of the old lease and the immediate execution of the new one was made at the instance of Gage, and for reasons not authorized by law; that they were collusively and wrongfully made for the evident purpose of defeating the rights of those who might wish to purchase the land, and with the view of perpetuating the use of the same in Gage under the new lease for a much longer period than permitted by law.

The conduct of Gage and the Commissioner in the cancellation of the old and the execution of the new leases as a part of the same transaction, and without the existence of any legal ground therefor, amounted in legal contemplation to a fraud upon the rights of intending purchasers, and leases obtained or executed under such circumstances, and in derogation of the rights of those who may wish, and who have the right under the law, to purchase the land as actual settlers at the expiration of any lease, should, we think, be treated as nullities.

It may be true that inasmuch as the Swan lease was at the instance of Gage illegally canceled by the Commissioner, and that inasmuch as the new lease immediately executed in its place was also illegal, that therefore the land was subject to sale at the end of the five years from the beginning of the Swan lease, or whenever the term under the Swan lease would have expired by law, and this notwithstanding the existence of the lease to Gage executed in its place at the time of the cancellation of the Swan lease on August 17, 1896. But even if this be true, the practical effect of this illegal transaction between the Land Commissioner and Gage would be the same upon the rights of intending purchasers as if the cancellation of the Swan lease and the execution of the new lease to Gage had been in every way legal. Under the

law there was only one cause or ground upon which the Commissioner could have legally canceled the Swan lease, and that was for the non-payment of the rental; and if at the expiration of the five year term for which it was made, or if indeed at any time after its cancellation an actual settler had sought to purchase this land, the records would have disclosed that the lease to Swan had been canceled on August 17, 1896, and that the land was thereafter under lease to Gage and there-fore not subject to sale. The records, of course, failed to show the col-lusive and, in legal contemplation, the fraudulent transaction between the Commissioner and Gage by which the Swan lease was canceled and one for a longer term illegally substituted in its place, with all the ap-pearances of being perfectly regular and legal in every respect, and the intending purchaser would as a matter of course have assumed that the Swan lease had been legally canceled,—canceled for the nonpayment of the rental, the only reason for which the Commissioner was legally authorized to cancel it,—and that the lease to Gage was therefore valid. The fact that the Swan lease had been illegally canceled and that the lease to Gage by which it was succeeded was void did not appear and could not have been discovered from the records. It could have become known to an intending purchaser only by the discovery of the fact, outside of and independent of the records, that the Commissioner and Gage had acted collusively, and in legal contemplation fraudulently, in the cancellation of the Swan lease and the substitution of a new lease for a longer term in its place.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant Attorney-General, for respondent Terrell. [*Denman, Franklin & McGown,* for respondent Gage, adopted their brief.]—Under the decision in Ketner v. Rogan, 68 S. W. Rep., 774, this cancellation of lease No. 6413 was without authority and void, and the second lease (No. 14,852), as to the section of land in controversy, was absolutely null and void.

After the expiration of lease No. 6413 on September 20, 1897, there was no valid lease upon this section, according to the ruling of this court in the Ketner case. After that date, so far as the second lease (No. 14,852) was concerned, the land was on the market for sale, and this was the condition at the date of the execution of the third lease (No. 30,222).

The cancellation of the second lease was immaterial, that lease be-ing void. If respondent Gage were now holding under the second lease, it might be urged that he was estopped to deny its validity, but his express agreement or request that that lease be canceled, the same being void, can not now operate as an estoppel against him.

The land then, not being under lease on February 28, 1900, the third lease (No. 30,222) executed on that date was a valid lease, and the rent having been regularly paid thereon, is now, and was on the date of relator's application to purchase, a valid and subsisting lease,

and the land in controversy was not then, and is not now, subject to sale.

The cancellation of this last lease, without the consent of the lessee, and the award of the land to relator on his application to purchase, were without authority, and the reinstatement of the lease and cancellation of the award and final rejection of relator's application, were strictly in accordance with the construction of the statute by this court in the Ketner case.

BROWN, ASSOCIATE JUSTICE.—Relator filed his petition in this court against Charles Rogan, Commissioner of the General Land Office, and A. S. Gage, praying for a writ of mandamus against the Commissioner of the Land Office for the purposes as set out in the petition. Rogan's term of office having expired, Terrell was elected to succeed him and qualified according to law, after which he was made party defendant to the proceeding.

The petition alleges, in substance, that on the 11th day of June, 1902, he was an actual settler in good faith on section No. 2, block No. 347, certificate No. 33650, Gulf, Colorado & Santa Fe Railway Company original grantee, situated in Brewster County, Texas, and on the said day the said relator filed with the county clerk of the said county his application to purchase the said section for a home, complying in all respects with the requirements of the law in making the application and the affidavit, making the first payment upon the land and executing his obligation. On the same day relator filed his applications to purchase as additional lands to his home section each of the following described sections of land, situated in the same county, and each being within a radius of five miles from the first described section, to wit: section No. 2, in block No. 9, certificate No. 1-689, Galveston, Harrisburg & San Antonio Railway Company original grantee, and section No. 4, in block No. 347, certificate No. 3366, Gulf, Colorado & Santa Fe Railway Company original grantee. In making the applications for the last named sections the relator complied in all respects with the law; and on the 13th day of June, 1902, the said clerk of the County Court of Brewster County filed the applications and the several obligations with the Commissioner of the General Land Office, and deposited with the Treasurer of the State of Texas the one-fortieth part of the price of each section paid by relator thereon, and on the same day the Commissioner of the Land Office approved each of the said applications and awarded each of the said sections of land to the relator as purchaser thereof. Each of the said sections of land belonged to the public free school fund, and, prior to the making of said applications, had been classified as dry grazing land and appraised at $1 per acre, and at the same time the applications were made each of said sections was duly on the market for sale under the laws of this State.

After he had accepted relator's applications and awarded the lands to him, the Commissioner of the Land Office canceled and set aside the

award and contract made for the purchase of section No. 2, block No. 347, upon the ground that the land was, at the time the application was made, under a valid lease to A. S. Gage, which lease was then in full force and in good standing. On September 24, 1892, the Commissioner of the General Land Office leased section No. 2, block No. 347, and other lands, to T. F. Swann, for five years, and while the said lease was in force, to wit, August 1, 1896, Swan transferred all of his interest in the said lands under the lease to A. S. Gage. The Commissioner of the Land Office, on August 17, 1896, canceled the said lease by consent of Gage, and on the same day executed to the said Gage a new lease for section No. 2, block No. 347, for ten years from the first day of August, 1896, and afterwards, to wit, on February 28, 1900, Charles Rogan, then Commissioner of the General Land Office, canceled the lease made to A. S. Gage and leased the said section of land to him for ten years from the second day of February, 1900. Relator charges that both of the leases made to Gage were void and made for the purpose of giving him control of the land for greater period of time than was permitted by law. The petition prayed that the writ of mandamus issue against the Commissioner of the Land Office requiring him to reinstate the application, award and the contract of the relator for the said section No. 2, block No. 347.

Terrell, as Commissioner of the Land Office, and A. S. Gage, as co-respondent, answered by general demurrer and also by answer admitting the facts as stated in the petition to be true except in so far as they charged upon the respondents an intention to violate the law in making the said leases. It was alleged in the answer that the first lease was made to Gage in conformity to the previous customs and rulings of the Commissioners of the Land Office, and that the second lease was made in compliance with the decision of this court.

The lease made to Gage on the 17th day of August, 1896, was void, because the Commissioner had no power to cancel the existing lease which was in good standing and at the same time to execute another to him. Ketner v. Rogan, 95 Texas, 559. If the lease which had been made to Swann and assigned to Gage was not canceled by the transaction between Gage and the Commissioner of the General Land Office, it expired on the 24th day of September, 1897, and the land was on the market for sale or lease from that time until it was leased to Gage on the 28th day of February, 1900, at which time there was no obstacle to making a valid lease to Gage. By the execution of the lease of February 28, 1900, the land was withdrawn from sale during the continuance of that lease, and at the time relator made his application it was not on the market; hence, he acquired no right by his application, nor by his settlement upon the land. It is unnecessary to discuss the motive which may have prompted the Commissioner of the Land Office to make the last lease to Gage, for, while there are no facts charged which show an improper motive, yet, if it were true as charged, it could not affect the relator, because he had no right in the land, and the act of

leasing being lawful and done in a lawful manner vested the right of a lessee in Gage during the term for which it was made.

The writ of mandamus will be refused in this case, and all cost of this proceeding will be taxed against the relator.

*Refused.*