BEN PRUETT v. J. T. ROBISON, COMMISSIONER OF THE GENERAL LAND OFFICE, ET AL.

No. 2737.   Decided February 28, 1917.

**1.—Land—Boundaries—Description.**

As applied to a section (640 acres) of land surveyed in a square the eastern boundary lines of which ran N. 27° W. and S. 63° W., the description of a leased portion thereof as the "S. E. ¼" of such section means the land lying in a rectangle south and east of a line extending from the center of the N. E. to the center of the S. W. boundary lines,—not a triangular tract.   (P. 284.)

**2.—School Land—Successive Leases—Placing on Market.**

A lease of school land before the expiration of an existing lease would be void because preventing the land coming on the market as required by law on the expiration of the first lease (Const., art. 7, sec. 4; Rev. Stats., 1911, art. 5454).   The person claiming the right of lease would be precluded from questioning the validity of the former lease by failure to bring suit within one year as required by the Act of March 16, 1905 (Laws, 29th Leg., p. 35).   And though the State would not be concluded by such statute, the Land Commissioner could not set aside such former lease and relet the land without first offering it for sale as required by article 5454, Revised Statutes.   Mr. Justice Hawkins dissents.   (Pp. 284-286.)

Original application to the Supreme Court, by Pruett, for writ of mandamus against Robison, Commissioner of the General Land Office, with whom E. C. Williams, an adverse claimant of the school land in controversy, was joined as respondent.

*J. A. Gillett,* for petitioner.

*B. F. Looney,* Attorney General, and *G. B. Smedley,* Assistant, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court.

This mandamus proceeding was begun here as an original suit to require the Commissioner of the General Land Office, J. T. Robison, to cancel a sale made by the Land Commissioner on October 24, 1913, to E. C. Williams, respondent, of the east one-half of the southwest quarter of school land section No. 218 in block 9 of the Galveston, Harrisburg & San Antonio Railway Company lands, situated in Jeff Davis County, Texas, and to reinstate a lease covering the same in favor

of Mitchell and Pruett, which was made February 25, 1913, with the Land Commissioner for a period of five years thereafter. Subsequently the relator, Ben Pruett, by purchase from Mitchell of his interest in said lease, became the sole owner thereof, and he prosecutes this suit in his own name.

The lease was made to Mitchell and Pruett about eight months prior to the date of the sale of the same land to E. C. Williams, respondent, the Land Commissioner at the same time cancelling said Mitchell and Pruett lease. The action on the part of the Land Commissioner in cancelling the Mitchell and Pruett lease, and in selling to the respondent, Williams, was taken on the advice of the Attorney General's Department.

The lines of section No. 218, in question, do not run north, east, south and west, but run north 27 W., south 63 W. The contention of the relator, according to his petition, appears to be, that by the term southeast one-half of the section leased to Buttrill, was meant that portion of the section in the shape of a triangle lying between a line extending from the northeast corner to the southwest corner of the section. We think this contention can not be sustained, and that the land indicated in the description, southeast one-half, as described in the Buttrill lease, was a rectangle lying between a line extending from the center of the northeast boundary to the center of the southeast boundary. We think this is the common, ordinary acceptation of the term "Southeast one-half of Section 218," there being no words employed to indicate that a triangle was intended. In the sale of the public school lands, such as these, a description by the term section, quarter section, or half section, is commonly understood to mean such quantity in a rectangular shape, and not a triangle. There being nothing to indicate that any other meaning was intended, we think it should be accorded that construction here.

The contention of the Attorney General, on behalf of the Land Commissioner, Robison, is, that said lease to Mitchell and Pruett was void when made, on the ground that it was made before the expiration of a lease to John Stilwell of the southwest quarter of said section made on April 23, 1908, which did not expire until 1913, and that to give effect to the Mitchell and Pruett lease would have the effect of keeping the land off the market, by not allowing a reasonable time between the expiration of the Stilwell lease and the execution of the Mitchell and Pruett lease, for purchasers to buy, the date of the latter lease being in fact prior to the expiration of the Stilwell lease. At the time the lease was made to Mitchell and Pruett, the law prohibited the sale of fractional portions of a section, and it is contended that until Stilwell's lease to said southwest quarter expired, a sale of any of the section could not be made, and that to give the Mitchell and Pruett lease effect would result in prohibiting the sale of the land until 1918, when it would expire. It is alleged and shown that the land was in

demand for purchase at the time the Mitchell and Pruett lease was executed.

Article 7, section 4, of the Constitution provides that school land "shall be sold under such regulation, at such times, and on such terms as may be prescribed by law," and this provision has been recognized by this court as requiring the sale of school land, and prohibiting it from being kept off the market for an unreasonable length of time. Ketner v. Rogan, 95 Texas, 559, 68 S. W., 774; Reed v. Rogan, 94 Texas, 182, 59 S. W., 255; Smisson v. State, 71 Texas, 222, 9 S. W., 112.

Article 5453, Revised Statutes, 1911, being a part of the Act of 1901, provides as follows:

"On the expiration of any lease in the absolute lease district, the lands shall remain subject to sale for a period of ninety days; and, if it has been previously classified and valued by the Commissioner of the General Land Office, and notice given to the county clerk, it shall not be necessary to give the clerk any further notice in order to put the land on the market, but it shall be considered as already on the market and subject to sale. During said period of ninety days the Commissioner of the General Land Office shall suspend action upon any application to lease said land, and shall award it upon any legal application to purchase made during said time."

It is provided by article 5454, Revised Statutes, 1911, which is a part of the Act of 1905, as follows:

"When a lease expires or is cancelled for any cause, the Commissioner shall not consider an application to lease the land prior to ninety days from such expiration or cancellation, and no lease on any land shall be made if it is in demand by purchasers."

The lease to Stilwell was made by the Land Commissioner April 23, 1908. It ran five years, and expired April 23, 1913. The State, through the Land Commissioner, continued to recognize it as valid until the lease of the same land to Mitchell and Pruett, which was made February 25, 1913, or about two months prior to the expiration of the Stilwell lease. The rights which Pruett, the owner of the Mitchell and Pruett lease, is here asserting as a basis for the mandamus sought against the Commissioner of the General Land Office are those conferred by the lease to him of February 25, 1913. While the Stilwell lease was void at the time it was made, for the reason that the land was already leased to another, yet it was not open to attack by anyone subsequently claiming the right to purchase or lease the land covered by it after the expiration of one year from the date of its original award, and no subsequent claimant who had permitted it to stand unchallenged for such period could acquire any right antagonistic to it. Act of 1905, page 35. It was not attacked within such period by Pruett, or anyone else. It, therefore, became a valid lease in favor of Stilwell as against Mitchell and Pruett, and they consequently acquired no right to the land by virtue of the lease which was made to them February 25, 1913. It is true that Stilwell is not a party to this suit,

and consequently has not himself pleaded that the Mitchell and Pruett lease is invalid, by reason of said statute of limitation, but this statute of limitation was not enacted exclusively for the benefit of purchasers of school land, but its purpose was also to give protection to the interests of the State. In the case of Erp v. Tillman, 103 Texas, 584, 131 S. W., 1057, Mr. Justice Williams declared that the Act referred to was more than a statute of limitation, and its enactment was not alone for the benefit of a purchaser of school land.. In the discussion of such question he said:

"It ought not to be forgotten, though it often is, that the interests of the two contestants over school land which has been sold to one of them are not the only ones involved. The State has an interest in the maintenance of sales made for the benefit of its school fund, and it was largely to give such protection that this statute was passed. It had been common for sales which had stood for years to be treated as naught and the relations and accounts between the State and its purchasers disturbed by other applicants showing some failure to comply with the law in the making of the sales. It was not so much to protect purchasers who had not complied with the law as it was to prevent such interferences with sales and to reserve to the State the election to abide by or repudiate them, that this statute was adopted."

We think it is unimportant, in passing upon the question here, that Stilwell is not a party to this suit, and is, therefore, not pleading said statute of limitation of 1905, and that said Act, as substantive law, enures to the benefit of the State in the protection of its own rights. In which view the Stilwell lease was rendered valid as against all persons, including Mitchell and Pruett, but of course not valid as against the State.

If the award to Mitchell and Pruett on February 25, 1913, may be regarded as an act of repudiation of the Stilwell lease on the part of the State, of itself terminating Stilwell's rights and making effective the State's power to dispose of the land, still Mitchell and Pruett acquired no rights under the award to them, for the reason that the land had not been placed on the market or offered for sale for ninety days after the expiration of the Stilwell lease, and before making the lease to Mitchell and Pruett. The statutes and authorities first cited herein are conclusive of that question.

It follows that the sale to Williams was valid, and that his right to the land should not be disturbed, and the mandamus prayed for by Pruett should be refused.

*Mandamus refused.*

MR. JUSTICE HAWKINS delivered the following dissenting opinion: Chronologically, the facts of this case are these:

Section 218, in block 9, Galveston, Harrisburg & San Antonio Railway Company, lying in Jeff Davis County, was public free school land. The tract is rectangular, the longer lines running north 27 degrees east.

On January 13, 1906, the State leases the southeast half of the section to Clyde Buttrill for five years beginning October 25, 1905, which lease remained in good standing during that entire period.

The section was duly classified, appraised at $2.25 per acre, and, on May 19, 1906, placed on the market for sale.

On January 28, 1907, the northwest quarter of the section was sold by the State to John Stilwell. It is not involved in this suit.

On April 28, 1908, the southwest quarter of the section was leased by the State to Stilwell for five years beginning April 23, 1908, and during that entire period all rental payments thereon were duly made.

Said southwest quarter was appraised at $2.25 per acre, and advertised to come on the market on April 23, 1913, for sale.

On March 18 (or 28), 1913, the south half and the northeast quarter of the section were leased by the State to Mitchell and Pruett for five years beginning February 26, 1913.

On June 9, 1913, Williams filed his application to purchase the east half of the section at $1.50 per acre, which application was rejected upon the grounds that said lease to Mitchell and Pruett was in full force and effect, and said application was at a less price than that at which the land had been appraised and was subject to sale.

On June 9, 1913, Williams filed his application to purchase the southwest quarter of the section at $2.25 per acre, which application was rejected upon the ground that said lease to Mitchell and Pruett was in full force and effect.

On June 30, 1913, Williams filed his application to purchase the east half and the southwest quarter of the section at $2 per acre, which application was rejected upon the ground that the land had been appraised and placed on the market at $2.25 per acre.

On August 4, 1913, Williams filed his application to buy the east half and the southwest quarter of said section at $2.25 per acre.

On October 15, 1913, said lease to Mitchell and Pruett was cancelled by the Commissioner of the General Land Office.

On October 24, 1914, said application of Williams, filed August 4, 1913, was accepted, and the land therein described was awarded to him, and that sale is still recognized on the books of the General Land Office as being in good standing.

Mitchell assigned to Pruett all interests of the former under said lease to them, and the relator, Pruett, seeks here a writ of mandamus to compel the Commissioner to cancel said sale to Williams and to reinstate said Mitchell and Pruett lease covering the same three quarters of that section, the same being all of the section except the northwest quarter thereof which, as stated, had been sold to Stilwell.

The majority opinion says: "It is alleged and shown that the land was in demand for purchase at the time the Mitchell and Pruett lease was executed." That is not what I understand to be the legal effect of the pleadings, and, of course, no evidence was heard in this court. Upon that point relator makes no allegation. Williams, the co-respond-

ent, does aver that both prior to and after the expiration of the Stilwell lease, he, Williams, was desirous of purchasing all the unsold portion of section 218, but thought the existence of the Stilwell lease and of the Mitchell and Pruett lease prevented him from doing so, and that "he did not file an application to purchase any of said land until June 9, 1913."

The Commissioner, in his answer does, indeed, aver that "before the expiration of the lease to Stilwell and at the time of its expiration the unsold portion of section 218, *as this respondent is informed from the facts set up in the answer of respondent Williams,* was in demand by purchasers."

By no one is it alleged that anyone filed prior to said lease to Mitchell and Pruett, an application to purchase the land in controversy. Obviously said undisclosed desire of Williams did not amount to a demand or offer to purchase the land, and the qualified answer of the Commissioner is, therefore, insufficient to show such demand or offer.

The record is that the land is not shown to have been in demand for purchase prior to the lease to Mitchell and Pruett.

Relator's contention is that said lease to Mitchell and himself, covering the land in controversy, was valid, and, inasmuch as the rental payments thereunder have been kept up, it is still valid, and should be reinstated, and that said cancellation thereof was unauthorized by law, and, consequently, the sale of the land thereafter to Williams on his application of August 4, 1913, therefor, was invalid, and should be cancelled.

The contention of the Commissioner is that said sale to Williams was valid and that said lease to Mitchell and Pruett was invalid at its inception, because, at that date, a portion of the land covered by it, namely, the southwest quarter of said section, had not been on the market for sale for the statutory period of ninety days after the expiration of said lease to Stilwell covering said southwest quarter section.

The relator's further contention is that at the inception of said lease to Mitchell and himself said southwest quarter section had been on the market for such statutory period, with no purchaser therefor; in support of which contention he points to the fact that said lease of said southwest quarter to Stilwell was made subsequently to said lease to Buttrill, which covered the south or southeast half of the section, embracing the southwest quarter section covered by said lease to Stilwell.

Unquestionably, when said lease covering the southwest quarter of the section was executed to Stilwell, it was void because the land covered by it was then embraced by the prior lease to Buttrill, which was in good standing. Ketner v. Rogan, 95 Texas, 559, 68 S. W., 774. The majority opinion in this case so expressly declares. See also Blevins v. Terrell, 96 Texas, 411, 73 S. W., 515; Fish Cattle Co. v. Terrell, 97 Texas, 490, 80 S. W., 73.

Said prior lease to Buttrill expired in October, 1910, which was more than two years before the inception of said lease to Mitchell and Pruett.

The Commissioner had duly classified and appraised the entire section, and had placed it on the market for sale, and the entire unsold portion of said section, being the land here in controversy, had been on the market for sale, for greatly more than said statutory period of ninety days prior to the inception of said lease to Mitchell and Pruett. Consequently, said last mentioned lease was valid, and should be reinstated, and the subsequent sale to Williams was invalid and should be cancelled; wherefore the writ of mandamus should be awarded as prayed for by relator.

Just here, and in that way, this case would end, but for the Act approved March 16, 1905, chapter 29, page 35 of the General Laws of the Twenty-ninth Legislature, which is as follows:

"An Act to prescribe a period of limitation within which any person claiming the right to purchase or lease public free school, State University or asylum lands heretofore sold or leased to others, shall bring his suit therefor.

"Section 1. *Be it enacted by the Legislature of the State of Texas:* That hereafter all persons claiming the right to purchase or lease any public free school lands, or any lands belonging to the State University, or either of the State asylums which have been heretofore or which may be hereafter sold or leased to any other person under any provision of the law authorizing the sale or lease of any of said lands, shall bring his suit therefor within one year after this Act goes into effect, or after the date of the award of such sale or lease, if such award is made after the taking effect of this Act, and not thereafter.

"Sec. 2. If no suit has been instituted by any person claiming the right to purchase or lease any of said land within the period of time limited in the first section of this Act, it shall be conclusive evidence that all the requirements of the law with reference to the sale or lease of such lands have been compiled with; provided that nothing in this Act shall be construed to effect the State of Texas in any action or proceeding that may be brought by it in respect to any of said lands."

The opposite conclusion of my associates, to the effect that the lease to Mitchell and Pruett was invalid, and that the sale to Williams was valid, and that the writ of mandamus should, therefore, be refused, rests, as I understand it, upon the theory that although, as is stated in their opinion, "the Stilwell lease was void at the time it was made, for the reason that the land was already leased to another," that lease, at least for the purposes of this action, must be considered and treated by this court as valid down to the expiration of its stipulated term, because Mitchell and Pruett, and Pruett, had neglected, for one year from the execution of that lease, to attack it as invalid.

The majority opinion, in discussing the effect of said Act of 1905 upon said "void" Stilwell lease, does not, indeed, use the word "validate"; yet, it seems to me, the logic of that opinion leads, inevitably, to the conclusion that said Act is therein treated and applied to the facts of this case as a "validating Act," rendering valid, in legal effect,

throughout its entire term, a lease which "was void at the time it was made," thereby preventing the land from coming on the market for sale until the expiration of that term.

It must be conceded, of course, that if, after the expiration of more than one year after the execution of said Stilwell lease, and in a suit to which Stilwell was a party, anyone asserting a conflicting claim of right under the subsequent Mitchell and Pruett lease had questioned the validity of said Stilwell lease, and Stilwell had pleaded and proved limitation of one year under said Act of 1905 (and possibly whether he pleaded it specially or not, the evidence showing the necessary facts of the execution of such lease to him more than one year previously), the courts would be compelled to hold said Stilwell lease valid as against the complainant other than the State; and that is the most that I can find in said Act of 1905. But this is not a suit of that character; the full term of said Stilwell lease has expired; that lease is not being directly attacked; neither Stilwell nor any person asserting any claims under it is a party to this suit; and I am unable to comprehend how said Act of 1905 is applicable, in this action, for any purpose or to any extent whatsoever, unless it be to constitute a bar to the attack which the purchaser, Williams, is here making, in substance, upon the validity of said lease to Mitchell and Pruett, the validity of which lease Williams seems not to have questioned by suit within one year after its execution. Wyert v. Terrell, 100 Texas, 409, 100 S. W., 133. This proceeding was not instituted until October 21, 1914, and the answer of Williams was not filed until January 26, 1916.

It will be observed that I have assumed, as have my associates, that the date from which the one-year period of limitation, under said Act of 1905, should be reckoned, in a proper case, in favor of Stilwell, under said lease to him, is the date of that lease, rather than the date of the expiration of said prior lease to Buttrill.

That undoubtedly is correct, if said statute is merely one of limitation. But if said statute is valid as both a statute of limitation and a statute of validation, it is impossible to apply it as a statute of limitation without applying it, at the same time, to the same facts, as a validating statute. Manifestly it was impossible to apply said statute as a validating statute in the Stilwell lease prior to the expiration of the Buttrill lease, the latter being, admittedly, a valid lease; since to do so would impair Buttrill's vested rights, as prior lessee, in and to the southwest quarter section, which was covered by the Stilwell lease.

Or, stating the propositions in converse order, the prior Buttrill lease, which covered the land embraced by the Stilwell lease, admittedly was valid, and its legal effect and operation during its entire term down to October 25, 1910, could not be impaired by said Act of 1905, and for that reason, if for none other, the assumed validating features, if any, of that Act could not be applied to the Stilwell lease during the term of the Buttrill lease; and since it was necessary to apply said Act as a whole, or not at all, to the Stilwell lease, the Act of 1905, if it

is, indeed, a validating Act, could not have been applied at all to the Stilwell lease during the life of the Buttrill lease.

It follows, I think, that even if said Act of 1905 is to be applied as a validating Act. in this cause, to the Stilwell lease, the time limit of one year, in favor of the Stilwell lease, must be counted as beginning at the expiration of the Buttrill lease, thereby putting said Act into full effect, as to the Stilwell lease, one year later, on October 25, 1911, and validating, as of that date, at least as to Mitchell and Pruett, the lease to Stilwell which, admittedly, was "void" when executed, and which, for reasons stated, must have remained void at least down to the expiration of the Buttrill lease.

This may serve to illustrate the difficulties which grow out of trying to apply said Act of 1905 as a validating statute. Ordinarily validation statutes operate directly and immediately upon the subject matter; and the fact that the Act of 1905 could not directly and immediately operate to validate the Stilwell lease tends strongly to show either that it ought not to be held to be a validating Act, or that, as such, it has no fair or proper application to that lease, or in the case at bar, unless it be against, rather than in favor of, the purchaser, Williams.

The majority opinion quotes from the opinion by Mr. Justice Williams, in Erp v. Williams, 103 Texas, 584, 131 S. W., 1057, in support of the view that said Act of 1905 is more than a statute of limitation, and was intended to give the State protection in the maintenance of sales made for the benefit of its school fund. The same reasoning as to the effect of the Act applies, of course, to leases. But in that view as to the general effect of that statute I do not concur.

I can not believe that the Legislature ever intended said Act of 1905 to enable the State, through the Commissioner of the General Land Office, or otherwise, to declare valid, and to enforce, a lease which, like said Stilwell lease, was made in contravention of statutory provisions, and in disregard of at least the spirit of the constitutional mandate to the effect that the public free school lands shall be sold as early as practicable. Art. 7, sec. 4.

Some reason might be assigned for validating a sale or lease which, at the worst, was irregular in some particular; but I can think of none for declaring valid and enforcing a lease which violates a plainly inhibitory statute and contravenes the principles announced in the above cited cases, 95 Texas, 560, 96 Texas, 411, and 97 Texas, 490. I can not see that said Act of 1905 in anywise or to any extent affects any right of the State, or its status in relation to any sale or lease, whether same originally was valid or void.

In further support of my conclusion that said Act of 1905 should not be treated as validating said Stilwell lease, even as against said subsequent lessees, Mitchell and Pruett, I offer these three reasons:

1. There is nothing in the body of the Act to suggest that it was intended as a validating Act. The language is apt in a statute of limitation, but not in a validating statute. Section 1 expressly fixes a

definite time for bringing suits in the classes of cases to which it is applicable; and that is all. Section 2 expressly provides that failure to bring such suit within the time stipulated therefor "shall be conclusive evidence that all the requirements of the law with reference to the sale or lease of such lands have been complied with," thereby prescribing a rule of evidence to be observed and enforced by the courts in suits of that character; and that is all, except the proviso that the statute shall not be construed as affecting the State in any action or proceeding that may be brought by the State in respect to such lands.

In both sections, the theme is *suits;* and the statute does not use the word "validate" or any word or set of words which appear to me to be of similar import.

The Court of Civil Appeals for the First Supreme Judicial District, in an opinion by Mr. Justice Reese, treated said Act of 1905 as a statute of limitation only, and not a validating Act. Tillman v. Erp, 121 S. W., 547.

In Slaughter v. Terrell, 100 Texas, 600, 102 S. W., 399, the Supreme Court, through Judge Brown, made the following expression of its views as to the effect of said Act of 1905:

"In order to ascertain what the Legislature intended by the enactment of this law, we must consider the evil that existed, and determine what the remedy was to be. Under the law as it previously existed, purchasers of school lands were liable to have their titles attacked by third persons who desired to purchase the land, and such persons might call in question the qualification of the purchaser as well as the performance of conditions prescribed by law, for example, that when the purchase was made the purchaser did not actually reside upon the land, or that he did not intend to make it his home, and thus, although the State recognized his right, the purchaser was constantly exposed to such attacks. This rendered such titles uncertain, and to remedy that evil the Legislature enacted the law now under consideration, which requires that any person who desires to purchase land theretofore purchased by another shall bring his suit to set aside the former purchase within twelve months of the award of it, or he will be barred."

2. If it be held that by the terms of said statute it is a validating Act, then such validating features thereof are void, and probably the whole statute is void, because there is in the caption or title of the Act no language or word which, by any stretch of the imagination, reasonably can be considered or held to embrace any such validating feature in the body of the statute. On the contrary, the caption plainly and expressly declares that the Act is one "to prescribe a period of limitation" for bringing a suit of the character therein designated; and that is all. Constitution of Texas, art. 3, sec. 35.

3. Any and all such validating features as may be thought or be held to be embraced in the body of said statute appear to be violative of and repugnant to the following italicized provisions of section 4 of article 7 of the Constitution of Texas:

"The lands herein set apart to the public free school fund shall be sold under such regulations, at such times, and on such terms as may be prescribed by law; and the *Legislature shall not have power to grant any relief to purchasers thereof.*"

The inhibition upon the power of the Legislature "to grant any relief" to purchasers of public free school lands seems very plain, as I read it in our organic law. Over the public policy which is wrapped up in that inhibition neither the Legislature nor the courts have any control whatever.

Applying said provision of section 4 of article 7, these things are found to be true:

(a)    The land in controversy formed a part of the public free school fund.

(b)    "The Stilwell lease was void at the time it was made, for the reason that the land was already leased to another." Majority opinion.

(c)    The Stilwell lease remained void, as to the State, down to the expiration of its term, unless it was validated by said Act of 1905.

(d)    If said Stilwell lease remained invalid throughout its entire term, it did not take or keep the land covered by it off the market, and, therefore, did not constitute any legal obstacle whatever to the valid execution of said lease to Mitchell and Pruett. Blevins v. Terrell, 96 Texas, 411, 73 S. W., 515; Fish Cattle Co. v. Terrell, 97 Texas, 490, 80 S. W., 73; Wyerts v. Terrell, 100 Texas, 409, 100 S. W., 133.

(e)    The lease to Mitchell and Pruett being valid, and covering the land in controversy, at date of the application upon which said land was awarded to Williams, as purchaser, said land was not then on the market for sale, and said award to Williams was illegal, and should be cancelled.

From the foregoing it is evident that the practical effect of said Act of 1905, as construed by my associates and as applied by them in this case, is to extend to Williams, as purchaser of said lands, "relief" by validating, or making effective, at least from and after expiration of the Buttrill lease, the aforesaid lease to Stilwell, thereby striking down, and throwing out of the way, the intervening lease to Mitchell and Pruett, under which relator claims. That practical result now seems to me to fall within the inhibition of said section 4 of article 7. I treat that phase of this case in a merely tentative way because I have not had opportunity for fully satisfying myself on that point; but as to the soundness of my foregoing reasons numbered 1 and 2, respectively, I have no doubt whatever.

Rejecting, then, the theory that said Act of 1905 is a validating statute, and that under its operation the Stilwell lease ever constituted any legal impediment or bar to the sale by the State of the land which that lease covered, the case is brought down to this status at the date of the lease to Mitchell and Pruett: The Buttrill lease had expired more than two years previously. The term of the Stilwell lease had not expired, but that lease was void, and had been so from its incep-

tion, and, consequently, was not in the way of a sale of the land covered by it.   All of the land had been duly classified and appraised and placed on the market, and had remained on the market for longer than the statutory. period.   During that period~no one had applied to purchase it.   Consequently the State was free to lease it to anyone who might desire to lease it, and Mitchell and Pruett were, correspondingly, free to lease it, as was done by them.   It follows that said lease was valid, and that it should be reinstated, and that on August 4, 1913, the date of the filing by Williams of his application to purchase said land was not on the market for sale, and, consequently, the award to him was illegal (121 S. W., 547, and cases cited), and should be cancelled.

For the accomplishment of those just and salutary results the writ of mandamus should be granted.