**WOODS et al. v. SELBY OIL & GAS CO. et al. (No. 7170.)\***

Court of Civil Appeals of Texas. Austin.
Nov. 23, 1927.

Rehearing Denied Dec. 21, 1927.

**1. Boundaries ☞9—Particular acreage conveyed out of larger tract, of which adjoining sides are given, should be laid off as parallelogram on such sides.**

Where deed calls for particular quantity of land out of side or corner of larger established tract, of which two adjoining sides are given, without more definite description, it should be laid off in form of parallelogram on given sides.

**2. Trespass to try title ☞6(1)—Plaintiff in trespass to try title must recover on strength of his own title.**

In trespass to try title, plaintiff must recover, if at all, on the strength of his own title.

**3. Evidence ☞441(8)—Prior contracts and negotiations held inadmissible, as merged in unambiguous deed.**

Prior contract between parties to suit in trespass to try title and their common grantor, and testimony as to prior negotiations between parties and what lands grantor intended to convey, *held* inadmissible, in absence of ambiguity in deed to plaintiffs; all previous negotiations, whether written or oral, being merged therein.

**4. Boundaries ☞9—Deed calling for south 75 acres of tract with fixed south and parallel east and west lines described parallelogram based on south line.**

Call in deed for south 75 acres of 155-acre tract, south line of which was agreed on and well established, and east and west lines fixed and parallel, described and set apart to grantees 75 acres in parallelogram with south line of such tract as base, as definitely and specifically as if so described by metes and bounds.

**5. Deeds ☞95—Evidence ☞452—Grantor's intent must be gathered from language of deed, and where description fits one tract only, there is no latent ambiguity nor occasion for extrinsic evidence.**

Grantor's intention must be gathered from language of deed, and where there is no conflict in terms of description, which fits one tract of land only, there is no latent ambiguity, nor occasion for admission of extrinsic evidence to explain grantor's intentions.

**6. Evidence ☞390(1)—Evidence of grantor's intent is inadmissible to vary unambiguous deed, in absence of plea of fraud, accident, or mistake.**

In absence of any plea of fraud, accident, or mistake, or any pleading seeking to reform deed without latent or patent ambiguity, such deed is conclusively binding on grantee, and evidence of grantor's intentions is immaterial and inadmissible to vary it.

**7. Trespass to try title ☞41(1)—Grantor's disclaimer of interest in omitted land as against grantees of one tract inured to their benefit and sustained judgment for them in trespass to try title.**

Grantor's disclaimer of any interest in land outside tracts described in deeds as against grantees in one of them inured to their benefit and sustained judgment for them in trespass to try title as against grantor and grantees in other deed, though court based judgment on other grounds.

**8. Estoppel ☞78(3)—Contract whereby grantees in each deed disclaimed interest in property conveyed by other held not recognition of title to disputed land.**

Contract between grantor and grantees of adjoining tracts, whereby grantees in each deed disclaimed any interest in property conveyed by other deed, *held* not a recognition of title to disputed land, estopping grantees in one deed to deny other grantees' title thereto, but merely recognition of rights vested in respective parties by deeds.

McClendon, C. J., dissenting in part.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Trespass to try title by the Selby Oil & Gas Company and others against C. D. Woods and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Critz & Woodward, of Coleman, for appellants.

McCartney, Foster & McGee, of Brownwood, for appellees.

BAUGH, J. Suit by appellees as plaintiffs against appellants in trespass to try title to 75 acres of land in Brown county. Judgment was for appellees.

The facts controlling in this appeal are substantially as follows: J. H. Fry and wife were the common source of title to 155 acres of land out of the George Stubblefield survey No. 622 in Brown county, on which acreage they had executed a standard form oil and gas lease to W. V. Lester. Thereafter by deed dated June 30, 1926, J. H. Fry and wife conveyed to appellees an undivided one-half interest in and to their royalty, or in the oil, gas, and other minerals,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error granted April 11, 1928.

subject to the Lester lease, on and under 75 acres out of said Stubblefield survey, describing same as follows:

"Part of the George Stubblefield survey No. 622, abstract No. 837, and being the south 75 acres of the west 155 acres of the following described 290.65-acre tract, to wit," said 290.65 acres being described by metes and bounds.

Two days later, on July 2, 1926, said J. H. Fry and wife by deed of that date conveyed to C. D. Woods, through whom the other appellants claim, a similar one-half undivided interest in their royalty on and under 80 acres out of said survey, describing same as follows:

"80 acres out of the N. W. corner of the George Stubblefield Sur. No. 622, which is the north 80 acres out of the west 155 acres of the north one-half of said Stubblefield survey."

Neither of these deeds makes any reference to the other, and neither is made by its terms in any manner dependent upon the other, but each is a distinct and complete instrument in itself. They were not contemporaneous, nor a part of the same transaction.

The metes and bounds of the 155-acre tract are well fixed. The north and south lines are each 2,481.4 feet in length. The south line runs due east and west. The north line, running east from the northwest corner of said tract runs S. 89° 25' E., or a variation south from a due east and west course of 35'. The east and west lines of said tract are parallel. The west line is 2,733.3 feet long, but because of the slight deviation of the north line from a true east and west course, the east line of said 155-acre tract is shortened to 2,708.3 feet, or 25 feet less than the length of the west line.

[1] Both parties have briefed the proposition and are agreed that where a deed calls for a particular quantity of land out of a side or corner of a larger established tract of which two adjoining sides are given, without a more definite description, it should be laid off in the form of a parallelogram on the given sides. This rule seems well established. See 18 C. J. 293; Cullers v. Platt, 81 Tex. 261, 16 S. W. 1003; Pruett v. Robison, 108 Tex. 283, 192 S. W. 537; Diffie v. White (Tex. Civ. App.) 184 S. W. 1067; Koons v. Burkhart, 68 Ind. App. 30; 119 N. E. 820.

In the instant case, with reference to each of the deeds above mentioned, three sides of the tract are fixed, with only acreage called for in each deed. In applying this rule to appellees' deed to the 75 acres, it would be laid off as a parallelogram with the south line of the 155-acre tract as a base, and its east and west lines each 1,316.4 feet long. Applying the same rule to appellants' deed, their 80 acres would form a parallelogram with the north line of said 155-acre tract as its base, and its east and west lines each

1,404.4 feet long. Hence the north line of the 75 acres as thus located would cross at an angle of 35' the south line of the 80 acres so located; thereby causing a conflict between said two tracts on the east side of said 155-acre tract forming a triangle with a base of 12½ feet and approximately 1,240.7 feet long; and leaving a vacancy of the same dimensions on the west side thereof.

Appellees assert title to and seek to recover by metes and bounds their 75 acres, not as a parallelogram constructed on the south line of the 155-acre tract as its base, but as being the portion of said 155 acres remaining after appellant Woods and his assignees have been set aside their 80 acres in the form of a parallelogram based upon the north line of said 155-acre tract. It is appellees' contention, and the trial court so found, that it was the intention of J. H. Fry and wife, as manifested by their written contracts with appellees and with Woods, pursuant to which the deeds were executed, and of which all parties had notice, and by the oral testimony admitted over their objections, to sell and convey to Woods the north 80 acres of said 155-acre tract, the remaining 75 acres to be conveyed to appellees, and that said deed to appellees should be so construed. Fry and wife also disclaimed, in their answer, except as to their half of the royalty retained by them, as to both appellants and appellees any other interest in the minerals under entire 155 acres.

We shall not undertake to discuss in detail the several propositions presented by appellants. Their chief contentions are: (1) That in a trespass to try title suit, plaintiff must recover, if at all, on the strength of his own title; (2) that the deed from the Frys to appellees to the 75 acres, being clear and unambiguous on its face, and there being no pleadings of any fraud, accident, or mistake in its execution, nor any plea to reform it, the deed is conclusive against appellees; (3) that all previous negotiations and contracts, whether written or oral, were merged into said deed and could not be resorted to to make it cover any other lands than those expressly covered by its terms; and that, consequently, the trial court erred in receiving or considering any of such evidence, and in finding and adjudging the 75-acre tract to appellees in any other shape than that of a parallelogram.

[2] It is too well established to require citation of authorities that in a suit in trespass to try title, plaintiff must recover, if at all, upon the strength of his own title. We pass then to appellants' other contentions.

[3] We are of the opinion appellants are correct, and that it was error to admit the contracts between the Frys and the parties to this suit; and also error to permit the several witnesses complained of to testify concerning prior negotiations between the

parties and what lands J. H. Fry and wife intended to sell and convey to appellants and appellees. Such negotiations and contracts were only executory, and when the deed to appellees was executed all previous negotiations, whether written or oral, were merged into it, and in the absence of some ambiguity in the deed, as stated by this court in Whitehead v. Weldon (Tex. Civ. App.) 264 S. W. 960, "such final contract became the only repository and appropriate evidence of their agreement." See numerous authorities there cited; also, 18 C. J. 270.

In Luckenbach v. Thomas (Tex. Civ. App.) 166 S. W. 102, a case in which a purchaser sought to prove prior negotiations in a foreclosure on vendor's lien notes, the court said:

"The deed and notes constituted the final contract between the parties, into which all previous negotiations and agreements became merged."

Directly in point, also, is the case of Newmyer v. Williams (Mo. App.) 245 S. W. 56.

[4, 5] With the south line of said 155-acre tract agreed upon and well established, and its east and west lines also fixed and parallel, a call in said deed for "the south 75 acres" of said 155-acre tract described and set apart to appellees said 75 acres in a parallelogram under the decisions and the rules of law upon which both parties agree, as definitely and specifically as if same had been so described by metes and bounds in said deed. The court in Diffie v. White, supra, held:

"What the law supplies in a written instrument is to be treated with as much sanctity as that which the parties have themselves put there."

And in the same case the general and well-accepted rule is also laid down that—

"We must gather the intention of the grantor from the language used; and, where there is no conflict in the terms of the description, and that description fits one tract of land and no other, there is no latent ambiguity and no occasion for the admission of extrinsic evidence to explain the intentions of the grantor. Jamison v. N. Y. & T. L. Co. (Tex. Civ. App.) 77 S. W. 962; Thompson v. Langdon, 87 Tex. 254, 28 S. W. 934; Johnson v. Archibald, 78 Tex. 96, 14 S. W. 266, 22 Am. St. Rep. 27; Converse v. Langshaw, 81 Tex. 277, 16 S. W. 1031."

Supporting this rule may also be added Benskin v. Barksdale (Tex. Com. App.) 246 S. W. 363; Gibbs v. Barkley (Tex. Com. App.) 242 S. W. 463; Associated Oil Co. v. Hart (Tex. Com. App.) 277 S. W. 1044; Owen v. Trail, 302 Mo. 292, 258 S. W. 699; and Ashbaugh v. Ashbaugh, 273 Mo. 353, 201 S. W. 74. In the case last cited the court said:

"The intention must be ascertained from the language used, from what the grantor actually said, and not what he may have meant to say,"

and the language must be given its usual and ordinary meaning.

In Buie v. Miller (Tex. Civ. App.) 216 S. W. 633, it is said:

"It is well settled that nothing passes by deed except what is described in it, whatever the intention of the parties may have been.

"While parol evidence is often admissible to ascertain what lands are embraced in the description, such evidence cannot make the deed operate upon land not embraced in the descriptive words."

[6] We conclude therefore that there was no ambiguity in the deed to the 75 acres, either latent or patent, and in the absence of any plea of fraud, accident, or mistake, and of any pleading seeking to reform it, said deed was conclusively binding on appellees, and that evidence of the intentions of the grantors was immaterial and inadmissible to vary it.

[7] There was admitted in evidence, without objection, however, the deed from J. H. Fry and wife to Woods conveying the north 80 acres. It is admitted, in effect, by Woods in his answer to appellees' petition, that he and his assignees claim only under this deed and deraign title from no other source. As above stated, these deeds, as construed, necessarily create a triangular conflict on the east side of said 155-acre tract, and a corresponding triangular vacancy on its west side. Appellees did not seek to recover the lands in the triangular conflict; but they do assert title to the triangular vacancy on the west, on which is situated a producing well, which narrow tract falls without the boundary lines of both the 75-acre tract and the 80-acre tract as described in the deeds from the Frys to Woods and to appellees. Under our construction of these deeds, the Frys had not by their deeds parted with their title to this triangular tract on the west. Nor had appellees shown, under their own chain of title, any title thereto. But the Frys have filed a disclaimer of any interest therein against appellees, and with the other appellants have prosecuted a common appeal. This disclaimer, we think, inures to the benefit of the appellees, and as against all appellants sustains the trial court's judgment under the undisputed competent evidence, even though said court has based said judgment on other grounds.

[8] Nor do we deem the subsequent contract between all the parties hereto, relied upon by appellees, as a recognition by appellants of title to the disputed tract in appellees, and thus estopping appellants to deny same. As we construe this agreement, it refers to and merely recognizes the rights of the respective parties as vested in them by the deeds, and cannot be interpreted as adding to, or in any manner varying, the express terms of the deeds themselves.

We have referred to the conveyances and

the tracts of land in general terms, but the only interest claimed by any of the parties hereto, except the Frys, is an undivided fractional part, as stated in the first part of this opinion, in and to the oil, gas, and other minerals under said lands.

Other questions are raised by appellants, but in view of what we have already said it becomes unnecessary to discuss them. For the reason stated, the judgment of the trial court will be affirmed.

Affirmed.

BLAIR, J., concurs.

McCLENDON, C. J. I concur in the affirmance of the judgment upon the holding that if the deeds to Woods and appellees be construed not to convey the triangular tract in controversy, appellees are entitled to recover on the disclaimer of the Frys.

Appellees as plaintiffs below could only recover on the strength of their own title. But since the Frys disclaimed they were entitled to judgment against them on their disclaimer, and therefore the Frys' title could not be asserted by Woods as an outstanding title against appellees. If the Frys had not been made defendants, appellants' contention upon this phase of the case would be correct.

I find myself unable to concur in the holding that the deeds to Woods and appellees must be given the construction that the land in controversy was not conveyed by the Frys and that there was a conflict or overlapping of the two tracts conveyed, respectively, in the deeds to Woods and appellees. My conclusions upon this issue rest upon two considerations.

The deeds to Woods and appellees conveyed separate tracts out of a larger and well-defined tract. The Woods deed was executed in consummation of a contract dated June 26, 1926. It bound the Frys to convey and the subsequent deed conveyed the same tract of land. There is no variance in description in so far as these instruments are concerned. This contract fixed the rights of Woods and the Frys as of its date, both between themselves and as to all parties dealing thereafter with the Frys who had knowledge or notice of the existence of that contract. Woods could have enforced the contract by specific performance, both as against the Frys and as against any one dealing with them with notice of the contract. Of course, Woods and the Frys by mutual agreement could have abrogated or modified the terms of the contract so long as rights of third parties had not attached; but they did not do so. They carried it out as written in the deed of July 2, 1926. On June 28, 1926, appellees contracted with the Frys for 75 acres out of the south part of the larger tract. Appellees (and, of course, the Frys also) had full knowledge of the contract with Woods whereby he was entitled to a conveyance of the north 80 acres of this larger tract. There were only 155 acres in the tract, and if the south 75 acres is bounded on the north by a line parallel with the south line of the larger tract, it would necessarily leave title in the Frys to a small triangle (the land in question), and cover a small triangle of like acreage in conflict with the land contracted to be conveyed to Woods. If this construction be placed upon the contract with and deed to appellees, then Woods had the right, in the absence of any subsequent conveyance to him by the Frys, to enforce specific performance of his contract, and recover the triangle in conflict, both against the Frys and appellees; and, in view of his deed from Frys conveying the land described in his contract, he could have maintained trespass to try title as to this conflicting triangle against appellees. His rights were in no way affected by the fact that appellees' deed antedated his. The doctrine of merger has no application to this particular state of facts. The Woods contract was, of course, merged in the deed, but as there was no variance between the deed and the contract, the deed was merely in consummation of the contract, and the rights of Woods under the deed were enforceable as of the date of his contract against the Frys and appellees; the latter having contracted and accepted a deed from the Frys, with knowledge of the Woods contract. The doctrine of merger does not extend to the obliteration of the contract for the purpose of showing the inception of Woods' title under his deed and his rights thereunder against parties dealing with the Frys subsequent to and with notice or knowledge of the Woods' contract. Parol evidence as to what was in the minds of Woods and the Frys at the time the Woods contract was executed would not have been admissible, even as between themselves, to vary the terms of the contract. Under this state of the facts the land described in the Woods contract and deed must be laid off by fixing its south line parallel to the north line of the larger tract.

This being the status of the rights as between Woods and the Frys at the time appellees' contract was entered into, and the Woods contract, and by implication of law its legal effect, being known to appellees and the Frys, it will, I think, be presumed that they dealt with each other in the light of that contract, and their dealings should be construed with reference to it.

It is conceded by all parties to the suit, and the surrounding facts and circumstances demonstrate conclusively, that the Frys and appellees intended that there should be no vacancy or conflict in the two conveyances as regards the larger tract out of which they were carved. That tract contained exactly

155 acres. The Woods tract covering the north 80 acres must be delineated by drawing its south line parallel to the north line of the larger tract. It was manifestly the intention of the Frys and appellees to embrace in the latter's contract and deed the remaining 75 acres in the larger tract. It was described as the south 75 acres of that tract. To delineate it by the arbitrary rule generally applied to such description would violate the manifest intention of the parties as shown by the facts within their knowledge at the time. The evidence shows that the slight variation in course between the north and south lines of the larger tract was not known to any of the parties at the time either of the contracts or deeds or the contract noted below was executed. In the light of all of these circumstances, I am unable to concur in applying the arbitrary rule contended for so as to defeat the manifest intention of the parties as shown by the facts and circumstances and condition of the subject-matter as they existed at the time the several transactions took place. The general rule applied in the majority opinion is well established. It is, however, only a rule of construction which the courts apply as being a reasonable interpretation of the intention of the parties, in order to uphold a conveyance, rather than declare it void for uncertainty in description. Where land is described generally by acreage out of a corner or off a side of a larger tract, the courts will construct a survey of the designated acreage, by lines drawn parallel to the designated line or lines of the larger tract; not, however, because the parties have so stated in their writing, but because the writing is silent on the subject, and the presumption that they so intended is deduced from what men ordinarily would do under like circumstances. In the absence of some presumption, such description must be held void for uncertainty. The general rule must necessarily apply to Woods' contract, because no other rule was applicable at the time it was executed. It should not, however, I think be applied to appellees' contract and deed, when to do so would create the situation above outlined and defeat an intention of the parties which is both manifest and conceded. While this view may be in conflict with the literal language of the Texarkana case and other cases cited, I do not believe that the principle upon which it should be held to apply in the present case is at variance with those decisions.

I am further of the opinion that this construction of the boundaries in appellants' contract and deed is evidenced by the subsequent (July 28, 1926) contract of all the parties to both contracts and deeds. This contract was executed for the purpose of avoiding any controversy over the interest which the several parties might assert in royalties from oil wells drilled upon the respective tracts. It recited the Woods deed, giving the volume and page where recorded, but giving as its date June 26, 1926, the date of the contract in consummation of which it was executed. It recited appellees' deed in like manner, giving the volume and page of its record, but citing as its date the date of the contract in consummation of which it was executed. Woods disclaimed any interest in the property conveyed by appellants' deed and appellants disclaim any interest in the property conveyed by the Woods deed. The Frys join in this contract.

If we should construe the two deeds as in the majority opinion, thereby creating a conflict between the Woods and appellees' deeds, then we have the anomalous situation of Woods disclaiming any interest in the lands conveyed to appellees embracing this conflict, and appellees in the same instrument disclaiming any interest in the lands conveyed to Woods likewise embracing this conflict. No one will contend that the parties had such intention. This contract demonstrates that the Frys, Woods, and appellees construed the two deeds as together conveying the entire 155 acres. We are therefore thrown back to the original dealings of the parties in order to delineate the two tracts in accordance with this manifest intention of this writing to which all concerned were parties. Reverting, then, to the original transactions in the light of this manifest intention, we arrive at the same conclusion above expressed.

For these reasons I concur in the judgment of affirmance.