## UNITED STATES v. GLOBE & RUTGERS FIRE INS. CO. et al.

### Civ. No. 1213.

United States District Court,
N. D. Texas, Lubbock Division.
March 25, 1952.

Frank B. Potter, U. S. Atty., and A. W. Christian, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff.

Thompson & Coe, Dallas, Tex., for defendants.

DOOLEY, District Judge.

The plaintiff sues the defendants, six insurance companies, on respective fire insurance policies, Texas standard form, for the loss of certain cotton seed destroyed by fire at the premises of the McCoy Gin Company, Inc. on November 18, 1949.

The material facts begin with a written contract dated November 10, 1949 between the Commodity Credit Corporation and said gin company, being an agreement by the gin company to purchase for the corporation cotton seed from eligible producers under the price support program of the corporation, between said contract date of November 10, 1949 and December 31, 1949.

On October 8, 1949 the defendant Globe & Rutgers Fire Insurance Company issued its fire insurance policy to said gin company and on November 6, 1949 each of the other five defendants issued their respective fire insurance policies to said gin company, and all six of said policies were in force at the time of the fire later mentioned. The description of the subject matter insured as stated in each of said policies read as follows:

"On cotton, ginned and unginned, baled and unbaled, seed cotton, cotton seed, supplies of sacks and other packaging material containing or to contain cotton seed, and bagging and ties, their own, and provided the insured is legally liable therefor, this policy shall also cover such property sold but not delivered, held in trust or on consignment or for storage."

The gin company proceeded to buy cotton seed for the corporation under the above contract and 114,130 pounds thereof in its custody at the gin premises covered by said insurance policies was destroyed by fire November 18, 1949. The plaintiff does not claim that the fire was traceable to negligence of the gin company.

The question here is whether the respective policies in question insured the said burned cotton seed or only insured any liability of the gin company for the fire loss of said cotton seed. The decisions in this general field of litigation have been diverse, partaking of the multiform policy provisions from case to case. In contrast are those cases where the policy clearly insured the *property*[1], and those cases where with equal clarity the policy insured only the *liability* of the insured with respect to the property.[2] Still other cases

1. California Ins. Co. v. Union Compress Co., 133 U.S. 387, 10 S.Ct. 365, 33 L.Ed. 730; Hartford Fire Ins. Co. v. Evans, Tex.Civ.App., 255 S.W. 487; Southern Cold Storage & Produce Co. v. A. F. Dechman & Co., Tex.Civ.App., 73 S.W. 515; Home Ins. Co. v. Favorite, 46 Ill. 263; Lucas v. Liverpool & London & Globe Ins. Co., 23 W.Va. 258; Johnston v. Charles Abresch Co., 123 Wis. 130, 101 N.W. 395.

2. Allen v. Royal Ins. Co., Tex.Civ.App., 49 S.W. 931; Millers Mutual Fire Ins. Ass'n v. Warroad Potato Growers Ass'n,

disclose policy provisions somewhat akin to the terms of the policies in question, but also other alternative and disjunctive provisions, and the decision finally turned on a provision dealing directly with the described property rather than the liability of the insured for loss of such property.[3]

The contention of the defendants is that the plaintiff cannot recover under the present policies without showing that the insured is legally liable for the fire loss of the cotton seed. That view is quite arguable. The pertinent provision of the policies has been quoted in full above and the central phrase thereof reads "provided the insured is legally liable therefor". The words "liability" and "liable" have manifold meanings in law and that nuance makes "liable" fit as well in respect to one bound to respond in duty as to one bound to respond in damages. The gin company under its caretaker duty as bailee for hire certainly was responsible for the cotton seed and obligated to keep and deliver same safely, subject to exoneration only if performance be prevented without negligence on its part. That was a present and positive liability, and in fact no other liability ever supervened. In other words that liability in being was complete, and adequately answers the terms of the policy provision. Nothing novel is being stated. In the typical instance of bailment relationship a proper delivery of the property thereupon satisfies the right of the bailor and discharges the liability of the bailee, but that does not gainsay the fact that the bailee bore a legal liability during the period of the bailment.

Of course when construing flexible language the best key usually is the context. The entire language of the relevant policy provision in its ordinary sense consistently points to insurance on *property,* not on the insured's *liability* for a fire loss on such property. A strained construction is required to say that "legally liable therefor" in the central phrase defines the thing insured. Instead the more natural reading is that it defines a selective condition on the thing being insured. A simpler statement perhaps is that said central phrase is really some of the descriptive language identifying the property insured.[4] This viewpoint may draw question on the theory that it renders such phrase sterile, presupposing the insured would necessarily and without more be legally liable in the sense herein stressed for all property "held in trust or on consignment or for storage", but for one thing that contention would overlook the frequent tendency of bailees to attempt contractual stipulations against their common law liability.

If the policy provision in fact read "on the liability" of the insured then to be sure it only could mean liability for fire loss of the property, and the plaintiff would fail in the suit. This is true for the simple reason that a fire insurance policy, like many forms of insurance, is a contract of pecuniary indemnity. Its subject matter must have a money measure. Such insurance on *liability* cannot become payable apart from an incurred liability of the insured for money damages or at least a pecuniary obligation. The present policies however plainly purport to insure *property,* not only property of the specified kinds belonging to the insured, but also property of like kind, for which insured is liable, belonging to another owner, and the reasonable construction of the insurance contract is that the central phrase of the policy provision means liability of the insured already present and not contingent liability ushered in by a fortuitous fire. If the contrary meaning had been intended it would have been easy to state same in unmistakable terms. This construction makes for certainty instead of contingency. The protection of the bailor is on a dependable footing. Bailor and bailee are spared the vexation of controversy as to

---

8 Cir., 94 F.2d 741; In re Podolsky, 3 Cir., 115 F.2d 965; McCoy v. Home Ins. Co., 170 Pa.Super. 38, 84 A.2d 249; Michigan Fire & Marine Ins. Co. v. National Surety Corporation, 8 Cir., 156 F. 2d 329.

3. Home Ins. Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868; B. N. Exton & Co., Inc. v. Home Fire & Marine Ins. Co., 249 N.Y. 258, 164 N.E. 43.

4. Home Insurance Co. v. Peoria & P. U. Ry. Co., 178 Ill. 64, 52 N.E. 862.

liability of the bailee for the fire loss. No violence is done to the language of the policies. Even any fair doubt should be resolved in favor of the insured. The plaintiff has a good claim under the policies.

The conclusion just stated is well supported in several state and federal court cases all construing policy provisions parallel to the provision now in question and in the federal case the policy provision contained exactly the same phrase which is the central part of the provision in the present policies, as will be noted by reference to said cases and the comparable policy provisions respectively noted in the margin.[5]

In each of the cases just mentioned the third party claimant or owner recovered a judgment for fire loss against the insurer and the judgment was affirmed except in the case of Sanford Mfg. Co. v. Western Mutual Fire Ins. Co., where the appellate court held that if the policy stood alone its terms would warrant the judgment rendered, but that it was issued in compliance with a regulation of the railroad commission and when read in that framework it should be construed as insurance on the

liability of the insured warehouseman. The effect of those cases stated in other words was that recovery by the claimant did not depend on the insured being liable for the loss of the burned property.

The defendants have cited a number of authorities, several being noted in the footnotes of this opinion, and the one closest in point, together with the policy provision involved, will be particularly noticed.[6] The court there held that the subject matter of the insurance was the legal liability of the insured for the stored goods. This would be a formidable decision in behalf of the present defendants, but for the fact that the court also said that if the policy had recited that the goods were held in trust, or in similar custody then there could be no doubt that the insurance was for the benefit of the real owners. The policy provision of the present policies does contain the "in trust" and other similar recitals, so on the authority of the same court that decision distinguishes the present case. In any event, but for such distinction, that decision would seem to be against the current of judicial opinion.

A judgment will be rendered herein for the plaintiff.

5. American Eagle Fire Ins. Co. v. Gayle, 6 Cir., 108 F.2d 116, 118.
"*Provided the insured is legally liable therefor*, this item shall also cover such merchandise held in trust or on commission, or on joint account with others, or sold but not delivered".
Germania Ins. Co. v. Anderson, 15 Tex. Civ.App. 551, 40 S.W. 200.
"On cotton in bales for which bills of lading have been issued by their duly-authorized agents, and for which they shall be liable, while contained in compress yards, sheds, and platforms, and on board cars standing on compress tracks, situated on blocks 133 and 134, Ft. Worth, Texas."
Sanford Mfg. Co. v. Western Mutual Fire Ins. Co., 229 Iowa 283, 294 N.W. 406, 408.
"On merchandise of all kinds, property of assured and for which assured may be legally liable while contained in the one story, composition roof, frame building, located at 400 S.W.5th Street or within 50 feet (50') thereof, occupied as

Truck Depot, Des Moines, Iowa."
Pacific Fire Ins. Co. v. Murdoch Cotton Co., 193 Ark. 327, 99 S.W.2d 233, 234.
"On cotton in bales, their own or held in trust or on consignment or for which assured may be liable, and/or assured's interest as bailee, all while contained in or around gin houses and/or platforms, yards, and in warehouses of assured's as hereinafter provided and/or in transit from the premises covered hereunder to any railroad station or river landing and to cover at such railroad points or river landing until bill of lading has been issued but in no event to cover after such bill of lading has been issued."

6. Orient Ins. Co. v. Skellet Co., 8 Cir., 28 F.2d 968, 969.
"On merchandise and property of every description, not owned by the assured, for which they may be legally liable, all while contained in the ten-story, fire-proof building, situate and being No. 247–253 Sixth Avenue South, Minneapolis, Minnesota."